**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**
**ABERDEEN DIVISION**

**TOM WITHERS, III,**
**Plaintiff**

**CIVIL ACTION**

**v.**

**NO.: 1:24-cv-218-SA-RP**

**CITY OF ABERDEEN**
**Defendant**

**PLAINTIFF TOM WITHERS, III'S OPPOSITION TO DEFENDANT CITY OF**
**ABERDEEN'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Tom Withers, III, by and through his undersigned counsel, respectfully submits this Opposition to Defendant City of Aberdeen's Motion for Summary Judgment. For the reasons set forth herein, the City's motion is predicated on a fundamentally flawed and incomplete recitation of the facts and should be denied in its entirety.

**INTRODUCTION**

The City of Aberdeen ("the City") seeks summary judgment on the narrow and erroneous premise that Plaintiff's claim for legal fees is based solely upon a 2016 "Special Counsel Contract of Employment" (the "Zinn Contract"), and that this claim became time-barred following a Board of Aldermen ("the Board") meeting on June 4, 2019. This argument conveniently ignores the foundational basis of Plaintiff's claim: the City's long-standing contractual obligations to Ewing Solar Corporation ("ESC") under agreements executed in 2012 and 2013, which expressly provided for the payment of legal fees necessary to advance the City's solar and economic development initiative. The City's 2019 vote to void the Zinn Contract—an instrument intended to facilitate payment under the pre-existing agreements—was not a final and unequivocal repudiation of its underlying duties. To the contrary, the City's own attorney kept the door open

1

for further discussion, expressly inviting Plaintiff to submit additional documentation for the Board's consideration well after the supposed accrual date.

Plaintiff accepted this invitation, and communications regarding payment continued. The City's definitive breach did not occur until more than a year later, in December 2020, when the Board took overt and final action to terminate its relationship with ESC by authorizing litigation to reclaim project property and hiring a new energy consultant. It was this conduct—not the ambiguous and disputed events of 2019—that constituted a final repudiation and triggered the accrual of Plaintiff's cause of action. Because genuine issues of material fact permeate the timeline of the City's breach, and because the City itself has admitted in discovery that its liability under the 2012 and 2013 contracts remains a disputed factual issue, summary judgment is wholly inappropriate.

**STATEMENT OF RELEVANT FACTS**

The City's motion presents a carefully curated version of events, focusing exclusively on the Zinn Contract to create the illusion of a simple, time-barred claim. A complete review of the record reveals a far more complex history, rife with factual disputes that preclude summary judgment.

The City's refusal to honor its contractual obligations for legal services rendered in connection with the Aberdeen Economic Development and Energy Initiative precipitated this action. The dispositive facts surrounding the City's breach are memorialized in the official minutes of the City's Board of Aldermen meeting held on June 4, 2019. (ABERDEEN000108-109).

During that meeting, City Attorney Robert Faulks advised the Mayor and Board of Aldermen that he had received a demand letter from the Wilson Law Firm. (ABERDEEN000109). This letter, submitted on behalf of the Tom Withers, III/Withers & Withers law firm, sought

2

payment of $850,000.00 in legal fees owed by the City pursuant to the 2012 and 2013 contracts between the City and ESC and reconfirmed in the Special Counsel Contract of Employment. (Id.). The Special Counsel Contract the city purportedly executed with attorney Walter Howard Zinn Jr., identified Tom Withers, III/Withers & Withers as special counsel for ESC in all matters derived from the 2012 and 2013 contracts between the City and ESC. Plaintiff performed the legal services requested by his client ESC and as such is a direct third-party beneficiary of the City's contractual obligation with ESC to pay for legal services incurred in connection with the City's economic development initiatives. (Id.).

Mayor Maurice Howard was questioned about the contract and alleged that his signature was forged but did not dispute that plaintiff had performed the legal services or that the City had benefited from the contract. The mayor's allegation of forgery raises a fundamental dispute over the contract's execution and validity, which was not subjected to any evidentiary hearing or formal adjudication.

Immediately following this exchange, the Board of Aldermen took two decisive actions. First, on a motion by Alderman Stone, the Board voted to "declare the Special Counsel Contract of Employment with attorney Walter Howard Zinn Jr. to be unauthorized, null and void." (Id.). Second, the Board voted to "deny the purported claim of the Wilson Law Firm demanding $850,000.00 from the City of Aberdeen for legal fees rendered by the Withers & Withers law firm of Baton Rouge." (Id.). Both motions passed by a unanimous roll call vote. (Id.). The City took no further action to formally notify Mr. Withers or his counsel of this decision, instead merely recording it in the minutes of its public meeting

The City's obligation to pay for legal services related to its economic and energy initiative did not originate with the 2016 Zinn Contract. Rather, it stems from foundational contracts the

3

City entered into with ESC in 2012 and 2013. These agreements, which the City has never rescinded, obligated the City to cover expenses, including legal fees, incurred in the furtherance of the development project. The Zinn Contract itself explicitly references the authority granted by these prior agreements.

STATEMENT OF UNDISPUTED FACTS

1. In May 2019, counsel for Mr. Withers initiated contact with the City Attorney, Robert Faulks, to discuss payment for Mr. Withers' extensive legal work on the project. (Def.'s Ex. C, Faulks Decl. ¶ 11). Mr. Faulks and the Board immediately focused their attention on the validity of the Zinn Contract, which had been executed by then-Mayor Maurice Howard. (Def.'s Ex. A, June 4, 2019 Minutes).

2. On June 4, 2019, the Board voted to declare the Zinn Contract "unauthorized, null and void" and to deny the $850,000 claim submitted on behalf of Mr. Withers. (Def.'s Ex. A). The City now posits this date as the definitive moment of breach.

3. However, communications did not end there. The City Attorney, Mr. Faulks, continued to engage with Mr. Withers' counsel. In a critical email dated November 7, 2019, after reiterating the Board's position on the Zinn Contract, Mr. Faulks expressly invited further dialogue, stating: "We will take a look at any documents you want to share. We would be interested in any letters, faxes or e-mails exchanged between Mr. Withers and Maurice Howard..." (Def.'s Ex. E). This statement directly contradicts the City's assertion that its denial was final and unequivocal as of that date.

4. Relying on this invitation, Mr. Withers, through his client ESC, submitted a formal demand for payment of expenses, including his legal fees, to the City on January 31, 2020.

4

This demand was made pursuant to the City's un-rescinded 2012 and 2013 contracts with ESC. The City acknowledges receipt of this demand. (Def.'s Resp. to Interrogs. 24 & 25).

5. The City never formally responded to the January 2020 demand. The year 2020 was marked by significant disruption, including the onset of the COVID-19 pandemic and substantial turnover within the City's government. Following the 2020 municipal elections, four new aldermen joined the Board and Walter Zinn replaced Robert Faulks as City Attorney. (Def.'s Resp. to Interrogs.). Mayor Howard, the official who signed the Zinn Contract, was reelected and remained in office.

6. In July 2020, counsel for Mr. Withers attempted to follow up on the pending claim by contacting the new City Attorney, Walter Zinn, and requesting the matter be placed on the Board's agenda for consideration. Mr. Zinn failed to respond.

7. The City's final, unequivocal repudiation of its contractual obligations occurred in December 2020. At a Board meeting on December 1, 2020, the Board authorized City Attorney Zinn to actively prosecute a pending lawsuit to reclaim the very property that had been transferred to ESC for the development project. Subsequently, on December 15, 2020, the Board officially contracted with a new consultant, Priority Power, to pursue a different energy project, thereby abandoning the venture with ESC for which Mr. Withers had provided years of legal services. These actions represented the first clear and irreversible breach of the City's agreements with ESC.

8. Crucially, the City has conceded the existence of a central factual dispute. In response to discovery, the City admitted that "whether or not the city is liable for payment of attorney fees pursuant to the 2012 & 2013 contract is a genuine issue of material fact."

**LEGAL STANDARD**

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it might affect the outcome of the suit under the governing law, and a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. 'A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party.' *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must view all evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**ARGUMENT**

**I. THE CITY'S MOTION FAILS BECAUSE THE TEN-DAY BILL OF EXCEPTIONS STATUTE IS WHOLLY INAPPLICABLE TO MR. WITHERS'S COMMON-LAW CONTRACT CLAIM.**

The City's primary argument—that Mr. Withers's claim is barred by a ten-day statute for appealing municipal board decisions—is fundamentally flawed and misapprehends the nature of both the City's action and Mr. Withers's claim. The procedural vehicle for appealing a quasi-judicial decision of a municipal board, the bill of exceptions under Mississippi Code § 11-51-75, has no application to a municipality's simple refusal to pay a contractual debt. The City's vote on June 4, 2019, was not an adjudication; it was a breach.

The bill of exceptions statute provides an exclusive remedy for parties aggrieved by a *judgment or decision* of a board of supervisors or municipal authorities. Miss. Code Ann. § 11-51-75. Mississippi courts have long held that this statutory appeal is limited to challenges of a board's *quasi-judicial* or *legislative* actions, not its ministerial or administrative functions. *City of Madison*

*v. Bryan*, 763 So. 2d 162, 166 (Miss. 2000). When a municipality enters into a contract, it sheds its sovereign cloak and acts as a private party. Its subsequent refusal to perform its contractual duties, such as paying for services rendered, is not a quasi-judicial act subject to a limited, record-based appeal. Rather, it is a common-law breach of contract, for which the proper remedy is a plenary civil action for damages. As the Mississippi Court of Appeals has explained, the statute "was not intended to be a vehicle for the litigation of a simple common law action for damages against a municipality." *City of Grenada v. Harrelson*, 84 So. 3d 35, 38 (Miss. Ct. App. 2012).

Here, the actions of the Aberdeen Board of Aldermen on June 4, 2019, bore none of the hallmarks of a quasi-judicial proceeding. There was no formal hearing, no presentation of evidence, no testimony under oath, and no written findings of fact or conclusions of law. The Board simply listened to its attorney, heard the Mayor imply forgery—a classic factual defense in a contract dispute—and then summarily voted to declare the contract "null and void" and "deny the purported claim." (ABERDEEN000109). This was the act of a contracting party repudiating an alleged obligation, not a tribunal rendering a judgment. To hold otherwise would create an absurd legal framework where any party with a contract claim against a Mississippi municipality would be forced to litigate complex factual disputes—such as the authenticity of a signature— through the narrow, non-evidentiary process of a bill of exceptions appeal, all within an impossible ten-day window. The law does not require such a result. Mr. Withers's lawsuit for damages is the proper and, indeed, the only available avenue to remedy the City's breach.

II.     **SUMMARY JUDGMENT IS IMPROPER BECAUSE THE CITY HAS FAILED TO MEET ITS BURDEN OF PROOF ON ITS STATUTE OF LIMITATIONS DEFENSE.**

Independently, the City's conclusory assertion that Mr. Withers's claim is "time-barred" is insufficient to warrant summary judgment. The statute of limitations is an affirmative defense, and

the City bears the burden of proving every element of that defense. *Crittendon v. State Farm Mut. Auto. Ins. Co.*, 99 So. 3d 751, 755 (Miss. 2012). The City's one-sentence argument fails to identify the specific claim it believes is barred, the applicable statute of limitations, or the date on which it contends the statute began to run. This failure alone requires denial of the Motion.

Even assuming the City intends to argue that Mississippi's three-year statute of limitations for breach of written contract applies, genuine disputes of material fact preclude summary judgment. Miss. Code Ann. § 15-1-49. A cause of action for breach of contract accrues at the time of the breach. Here, the alleged definitive breach and repudiation occurred on June 4, 2019, when the Board voted to deny the claim. However, the City has presented no evidence whatsoever regarding when Mr. Withers discovered, or through reasonable diligence should have discovered, this breach. The mere entry of the denial into public meeting minutes does not, as a matter of law, constitute notice sufficient to trigger the running of the statute of limitations, particularly where the City made no effort to directly communicate its decision to Mr. Withers or his counsel. The City is relying upon an email from the City's counsel, which is unreliable because said email was ambiguous and contradictory, not a final denial.

The email from Robert Faulks on November 7, 2019, contained two key parts:

1. It reiterated the Board's previous position on the 2016 Zinn Contract.

2. **It then stated: "We will take a look at any documents you want to share. We would be interested in any letters, faxes or e-mails exchanged between Mr. Withers and Maurice Howard..."**

This second part is fatal to the City's "final denial" argument.

- **An invitation to continue a dialogue is not a notice of termination.** A reasonable person in Mr. Withers's position would interpret this as the City being willing to reconsider its

position upon receiving more information. It signals that the matter is still open for discussion and potential resolution.

- A final, unequivocal repudiation required to start the statute of limitations clock must be "positive and unconditional." This email was conditional—it invited a future submission.

**2. The Email Did Not Address the Core of the Claim.**

Mr. Withers's claim is fundamentally based on the **2012/2013 contracts with ESC**, not solely the 2016 Zinn Contract. The November 2019 email only discusses the Zinn Contract. It does not mention, let alone finally deny, any obligation arising from the earlier, foundational agreements. Therefore, even if it were a final denial of the Zinn Contract (which it wasn't), it left the door open for the claim under the ESC contracts.

**3. The City's Subsequent Conduct Undermines Its Argument.**

Mr. Withers **reasonably relied** on Faulks's invitation by submitting a formal demand on January 31, 2020, pursuant to the 2012/2013 contracts.

- The City's failure to respond to *that* demand is a separate event that a jury could find was the actual breach or a continuation of the ongoing dispute.

- The principle of "estoppel" could apply here. The City should not be allowed to claim it gave final notice in November 2019 when its own agent's words and the subsequent course of dealing indicated the claim was still under active consideration.

**4. The Burden of Providing Clear, Unequivocal Notice is on the City.**

As the party asserting the statute of limitations defense, the City bears the burden of proving when the claim accrued. A murky, contradictory email that invites further submission is the opposite of the "clear, unequivocal, and positive" communication required by Mississippi law for

9

an anticipatory repudiation. As a matter of law, the court should not find that this email started the clock.

Even if the Court were to consider the 2019 communications, the City cannot meet its burden to prove a final, unequivocal denial. The City's current attempt to use this invitation to dialogue as the trigger for the statute of limitations is both illogical and inequitable. The City Attorney's November 7, 2019, email—far from being a definitive 'no'—expressly invited Plaintiff to submit additional documentation for the City's consideration. A reasonable party receiving such an invitation would not conclude that the matter was finally adjudicated; they would conclude that the door to payment remained open, contingent on the submission of further proof. Plaintiff reasonably accepted this invitation, submitting a formal demand in January 2020.

The November 2019 email is a powerful piece of evidence *for the Plaintiff*, as it creates a genuine issue of material fact regarding whether the City's repudiation was final in 2019 or whether the breach occurred later, in 2020, after the City ignored the subsequent formal demands and took definitive action to partner with a competitor.

Under Mississippi law, the question of when a plaintiff should have discovered an injury through the exercise of reasonable diligence is an issue of fact to be decided by a jury. *Stringer v. Trapp*, 30 So. 3d 339, 342 (Miss. 2010). The City has offered no affidavits, no correspondence, and no discovery responses to support its contention that Mr. Withers's claim is untimely. It has not met its initial burden under Rule 56 to show the absence of a genuine dispute on this critical factual issue. Accordingly, its request for summary judgment on this basis must be denied.

## III. THE CITY'S MOTION RESTS ON A FATALLY FLAWED PREMISE THAT PLAINTIFF'S CLAIM ARISES SOLELY FROM THE 2016 ZINN CONTRACT.

The City's entire statute of limitations argument is built on a foundation of sand. It incorrectly frames Mr. Withers' claim as arising exclusively from the 2016 Zinn Contract, which

the Board declared void in 2019. This mischaracterization is a transparent attempt to avoid the City's true, underlying contractual duties. The record demonstrates that Mr. Withers' right to compensation is rooted in the City's 2012 and 2013 contracts with ESC, which established the framework for the economic development project and provided for the payment of necessary legal expenses. The Zinn Contract was merely a vehicle intended to effectuate payment under those pre-existing obligations, not the source of the obligation itself.

The City's own evidence confirms this. The June 4, 2019 minutes show the Board's action was narrowly tailored to the Zinn Contract alone. (Def.'s Ex. A). The Board did not vote to rescind or declare void the foundational 2012 and 2013 contracts with ESC. By focusing solely on the Zinn Contract, the City ignores the primary source of its liability. As the City has admitted in discovery, the question of its liability under the 2012 and 2013 contracts presents a genuine issue of material fact. This admission alone is fatal to its motion for summary judgment, which requires the absence of any such dispute.

## IV. GENUINE ISSUES OF MATERIAL FACT PRECLUDE A FINDING THAT PLAINTIFF'S CLAIM ACCRUED IN 2019.

Under Mississippi law, a cause of action for breach of contract accrues at the time of the breach. 'The statute of limitations for a breach of contract claim begins to run at the time of the breach.' *Young v. S. Farm Bureau Life Ins. Co.*, 592 So. 2d 103, 107 (Miss. 1991). A breach occurs upon a clear and unequivocal refusal to perform. The City cannot establish, as a matter of law, that such a definitive breach occurred on either June 4, 2019, November 7, 2019 or December 1, 2020.

**A. The Board's June 4, 2019 Action and Subsequent Communications Were Ambiguous and Not an Unequivocal Repudiation.**

The City presents the Board's June 4, 2019 vote as a final, dispositive event. The subsequent facts prove otherwise. The continued engagement between the City's attorney and Mr.

11

Withers' counsel demonstrates that the matter was not considered closed. Most significantly, Mr. Faulks' email of November 7, 2019, expressly left the door open for further review. After stating the Board's position, he concluded, "We will take a look at any documents you want to share." (Def.'s Ex. E).

This is not the language of a final, unequivocal repudiation. It is an invitation to continue the discussion and provide more evidence. A party cannot simultaneously declare a matter irrevocably closed while also inviting the opposing party to submit more documents for consideration. At a minimum, this email creates a genuine issue of material fact as to whether the City had made a final decision. A reasonable fact-finder could easily conclude that the City's denial was provisional and subject to reconsideration upon the submission of additional information—information that Mr. Withers then provided in the January 31, 2020 demand. The City should be estopped from now claiming its denial was final when its own counsel's words indicated the contrary.

**B. The City's Inaction in 2020 Cannot Be Construed as a Final Denial as a Matter of Law.**

Following the City's invitation to submit more information, Mr. Withers, through ESC, did just that on January 31, 2020. The City's failure to respond to this demand does not automatically constitute a breach, especially given the context of 2020. With the upheaval of the COVID-19 pandemic, a newly elected Board, and a new City Attorney, a period of administrative silence is an insufficient basis for summary judgment. Mr. Withers acted diligently by having his counsel attempt to contact the new City Attorney in July 2020 to secure a decision. The City's continued silence in the face of these unique circumstances is a disputed factual matter for the jury to weigh, not a legal certainty for the Court to decide.

12

V.      **PLAINTIFF'S CAUSE OF ACTION ACCRUED IN DECEMBER 2020 WHEN THE CITY TOOK AFFIRMATIVE ACTION TO REPUDIATE ITS CONTRACTS WITH ESC.**

The most compelling evidence of breach is not the City's ambiguous statements in 2019 or its silence in 2020, but its decisive actions in December 2020. On December 1, 2020, the Board authorized its attorney to actively pursue litigation to reclaim the land from ESC. This was a definitive act of repudiation. Any lingering doubt was erased on December 15, 2020, (Withers Exhibit "A") when the Board hired Priority Power, a competing consultant, effectively terminating the project with ESC.

These were not mere administrative decisions; they were the functional and legal termination of the City's relationship with ESC and, by extension, its obligations under the 2012 and 2013 contracts. This is the moment the City's breach became undeniable and complete. The right to sue accrues at the moment of breach, not on the mere suspicion that a breach might occur. *See, e.g., Franconia Assocs. v. U.S.*, 536 U.S. 129, 143 (2002) (holding that a claim for repudiation of a contract accrues at the time the repudiation is treated as a breach). Mr. Withers was entitled to wait until the City's repudiation was clear and final, which occurred in December 2020. As this lawsuit was filed in 2024, it falls well within Mississippi's three-year statute of limitations for contract claims. Miss. Code Ann. § 15-1-49.

**CONCLUSION**

The City of Aberdeen's Motion for Summary Judgment is an attempt to win this case by ignoring the most critical facts. It asks the Court to disregard the foundational 2012 and 2013 contracts, the City's own invitation to continue dialogue after its supposed "final" denial, and the City's definitive acts of repudiation in December 2020. The timeline of when the City's breach occurred is a quintessential question of fact, riddled with disputes that a jury must resolve. For all

the foregoing reasons, Plaintiff Tom Withers, III, respectfully requests that this Court deny the City of Aberdeen's Motion for Summary Judgment in its entirety.

RESPECTFULLY SUBMITTED BY:

/s/ Kathleen M. Wilson
Kathleen Wilson [28836] (pro hac vice)
WILSON LAW FIRM, LLC
1762 Dallas Dr,
Baton Rouge, LA 70806
Telephone: (225) 923-8237
wilsonlawfirmllc@gmail.com
Attorneys for Tom Withers, III


/s/ Shauncey Hunter Ridgeway
Shauncey Hunter Ridgeway, MSB No. 105189
CHRISTIAN & SMALL LLP
603 Duling Ave., Ste. 204
Jackson, MS 39216
Telephone: (601) 427-4050
Facsimile: (601) 707-7913
shridgeway@csattorneys.com
Attorneys for Tom Withers, III (Local Counsel)

CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of November 2025, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all known counsel of record by operation of the Court's electronic system and by depositing same in the United States Mail, postage prepaid, and/or facsimile, and/or e-mail transmission of this date.

 /s/ Kathleen M. Wilson
KATHLEEN M. WILSON, 28836 (pro hac vice)

14