IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

TOM WITHERS, III                                                          PLAINTIFF

v.                                                    CIVIL ACTION NO. 1:24-CV-218-SA-RP

CITY OF ABERDEEN                                                          DEFENDANT

SANCTIONS ORDER

This matter comes before the Court on its own initiative. On December 10, 2025, the Court entered an Order to Show Cause [110] directing all counsel of record in this case to show cause as to why the Court should not impose sanctions against them pursuant to Rule 11 of the Federal Rules of Civil Procedure, the Court's Local Rules, and/or its inherent authority for filing legal memoranda containing hallucinated case citations. The four attorneys, namely Kathleen M. Wilson, Shauncey Hunter Ridgeway, Kathryn Y. Williams, and Mark C. McClinton, appeared before the Court on January 20, 2026 for a hearing on this matter.

Following entry of the Order to Show Cause [110], both parties submitted Motions for Leave [112, 113] to file corrected versions of the legal memoranda in issue.

Having considered the record, the applicable law, and counsels' explanation presented at the hearing, the Court is prepared to rule on the sanctions issue, as well as on the related pending Motions [112, 113].

*Relevant Factual and Procedural Background*

A brief recitation of the facts underlying this case provides helpful context. This action involves a contractual dispute between Withers and the City of Aberdeen ("the City") over legal fees. Withers is a licensed attorney in the State of Louisiana whose Complaint [1] brings a single breach of contract claim against the City. He is represented in this case by Kathleen M. Wilson, who was admitted pro hac vice, and Shauncey Hunter Ridgeway, who is a Mississippi-licensed

attorney and appears as local counsel. The City is represented by Kathryn Y. Williams, who was admitted pro hac vice in this case, and Mark C. McClinton, who appears as local counsel and is a resident attorney.

On October 24, 2025, this Court awarded Withers reasonable attorney's fees and expenses stemming from his efforts in obtaining and subsequently defending an entry of default, which the Court ultimately set aside. *See* [94] at p. 7. The attorneys for the City, rather than the City itself, were held responsible for payment of said fees and expenses. *See id.* After entry of the Court's Order [94], a series of submissions by the parties followed, including the three filings which form the subject of the instant sanctions issue.

On November 5, 2025, the City, through counsel, filed its Motion for Summary Judgment [98]. Withers timely responded in opposition to the same. *See* [105]. Thereafter, the City also filed a Motion Challenging the Reasonableness of Plaintiff's Notice of Submission of Accounting of Attorney Fees and Expenses [103]. Upon reviewing the briefs submitted in support of the parties' respective positions with regard to the two Motions [98, 103], the Court was unable to locate certain legal authorities cited within them. Specifically, the Court determined that the following filings contained hallucinatory citations, which the Court also lists:

1) Defendant City of Aberdeen's Memorandum of Law in Support of its Motion for Summary Judgment [99] citing *Miller v. City of Greenville*, 243 So. 2d 81, 83 (Miss. 1971). *See* [99] at p. 11.

2) Defendant City of Aberdeen's Memorandum in Support of its Motion Challenging the Reasonableness of Plaintiff's Notice of Submission of Accounting of Attorney Fees and Expenses [104] citing *Riley v. City of Tupelo*, No. 1:20-CV-186-GHD-DAS, 2023 WL 3568661, at 3 (N.D. Miss. May 18, 2023); *Buckner v. Walker*, No. 1:19- CV-146-SA-DAS, 2022 WL 2318582, at 4 (N.D. Miss. June 28, 2022); and *Harris v. City of Grenada*, No. 3:18-CV-158-DMB-RP, 2021 WL 6062574, at 7 (N.D. Miss. Dec. 22, 2021). *See* [104] at p. 4.

3) Plaintiff Tom Withers, III's Opposition to Defendant City of Aberdeen's Motion for Summary Judgment [105] citing *City of Grenada v. Harrelson*, 84 So. 3d 35, 38 (Miss. Ct. App. 2012) and *Crittendon v. State Farm Mut. Auto. Ins. Co.*, 99 So. 3d 751, 755 (Miss. 2012). *See* [105] at p. 7-8.

Both Wilson and Ridgeway, who again are counsel for Withers, appear as signatories to the Response [105] filed on behalf of Withers. Likewise, both Williams and McClinton, who again are counsel for the City, appear as signatories to the Memoranda [99, 104] filed on behalf of the City.

On December 10, 2025, the Court entered an Order to Show Cause [110] directing the attorneys from both sides to show cause as to why the Court should not impose sanctions against them for their conduct. The Order [110] set the matter for hearing and specifically directed the attorneys to provide the Court with copies of the cases at issue and cited in their respective filings. Following entry of the Show Cause Order [110], each of the parties sought leave to file corrected memoranda. *See* [112, 113]. Ultimately, through their respective Motions for Leave [112, 113], the attorneys admitted that the hallucinatory citations cited by them, and identified by the Court, resulted from unverified AI use.

The Court held a show cause hearing on January 20, 2026 and all attorneys of record were in attendance. Each of the attorneys expressed embarrassment and apologized to the Court. They also provided explanations regarding their independent roles in conducting legal research and/or drafting the filings at issue. In short, Williams and Wilson, the two out-of-state attorneys, assumed responsibility for drafting the filings at issue on behalf of their respective clients. Williams admitted to using an AI tool to conduct legal research, and Wilson admitted to using generative AI to draft her respective filing. Neither of them verified the legal authority output by AI before filing their briefs.

3

Ridgeway and McClinton, local counsel for the parties, admitted to failing to review the filings submitted to the Court on behalf of their respective clients though the same bore their electronic signature. They explained that they were unaware of their respective co-counsel's use of AI in this case. All attorneys involved first became aware that hallucinated cases were cited in their respective filings upon receipt of the Court's Show Cause Order [110] on December 10, 2025. At the hearing, attorneys for both sides represented to the Court that their respective clients were made aware of this impending issue.

Following the hearing, the Court stayed this case and cancelled the scheduled trial, which was previously set to occur on March 23, 2026.

*Applicable Standards*

"'[T]he central purpose of Rule 11 is to deter baseless filings in district court and thus… streamline the administration and procedure of the federal courts.'" *Sec. & Exch. Comm'n v. Faulkner*, 2018 WL 3708426, at *2 (N.D. Tex. Aug. 3, 2018) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990)). In pertinent part, Rule 11 provides:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:… the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law[.]

FED. R. CIV. P. 11(b)(2).

Accordingly, "[a]n attorney has a duty to conduct a 'reasonable inquiry into the facts and law of a case at the time [at] which [he or] she affixes her signature on any papers to the court.'" *Faulkner,* 2018 WL 3708426 at *2 (quoting *Mercury Air Grp., Inc. v. Mansour*, 237 F.3d 542, 548

(5th Cir. 2001)). "An attorney's conduct is judged… with an objective, not a subjective, standard of reasonableness." *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 528 (5th Cir. 2016) (citing *Whitehead v. Food Max of Mississippi, Inc.*, 332 F.3d 796, 802 (5th Cir. 2003)). "Reasonableness is reviewed according to the 'snapshot' rule, focusing upon the instant the attorney affixes his [or her] signature to the document." *Id.* (quoting *Smith v. Our Lady of the Lake Hosp., Inc.*, 960 F.2d 439, 444 (5th Cir. 1992)) (internal quotation marks omitted). "In light of the objective standard of reasonableness applied under Rule 11, an attorney's subjective good faith is not enough to immunize him [or her] from sanctions based on a Rule 11 violation." *Dodson v. Nichols*, 2024 WL 4299023, at *4 (M.D. La. Sept. 26, 2024) (citing *Thomas v. Cap. Sec. Servs., Inc.*, 836 F.2d 866, 873 (5th Cir. 1988)).

Separately, district courts have inherent authority to sanction the misuse of AI as such constitutes an abuse of the judicial process. *See Fletcher v. Experian Info. Sols., Inc.*, 168 F.4th 231, 240 (5th Cir. 2026) (holding that courts "have the inherent power to impose sanctions for abuse of the judicial process" and that "[s]ubmitting a brief riddled with fabricated [authority] is such an abuse."). "While sanctions under this power do not require a violation of a court order (as would a sanction based on civil contempt), they ordinarily require a specific finding of bad faith on the part of the party to be sanctioned." *Massachusetts Mut. Life Ins. Co. v. Williamson*, 2019 WL 7195318, at *3 (N.D. Miss. Dec. 26, 2019) (citing *In re Sealed Appellant*, 194 F.3d 666, 671 (5th Cir. 1999)). The "inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991)).

*Analysis and Discussion*

This Court is yet again "burden[ed] [with] addressing AI hallucinations in court filings." *Fletcher*, 168 F.4th at 234.[1] It has previously acknowledged that "AI is a powerful tool, that *when used prudently*, provides immense benefits." *Billups v. Louisville Mun. Sch. Dist.*, 2025 WL 3691871, at *4 (N.D. Miss. Dec. 19, 2025) (quoting *Ferris v. Amazon.com Servs., LLC*, 778 F. Supp. 3d 879, 881 (N.D. Miss. 2025) (internal quotation marks omitted; emphasis in original). However, while "[g]enerative technology can produce words," it cannot attach "… sincerity, truth, or responsibility to what it writes. That remains the sacred duty of the lawyer who signs the page." *Mattox v. Prod. Innovations Rsch., LLC*, 807 F. Supp. 3d 1341, 1343 (E.D. Okla. 2025).

This case presents the Court with an unusual scenario—attorneys for both litigants engaged in similar sanctionable conduct. As noted above, Williams admitted to using AI to conduct legal research and incorporating the output into her respective filing without verification. By the same token, Wilson admitted to using generative AI to draft her respective filing without verifying the legal authority incorporated into the generated draft. Their practice of blindly relying on technology resulted in the hallucinatory citations contained in their respective filings. "To state 'the obvious, an attorney who submits fake cases clearly has not *read* those nonexistent cases, which is a violation of Rule 11 of the Federal Rules of Civil Procedure.'" *Billups*, 2025 WL 3691871 at *5 (quoting *Willis v. U.S. Bank, N.A.*, 783 F. Supp. 3d 959, 961 (N.D. Tex. 2025)) (emphasis in original). Williams and Wilson did not dispute that their conduct violated the most basic duties imposed by Rule 11.[2] For their part, Ridgeway and McClinton, while not the drafters

---

[1] This Court recently sanctioned licensed attorneys in other cases for similar conduct. *See Billups v. Louisville Mun. Sch. Dist.*, 2025 WL 3691871, at *10-11 (N.D. Miss. Dec. 19, 2025); *Disability Rts. Mississippi v. Palmer Home for Child.*, 2025 WL 3691876, at *21-22 (N.D. Miss. Dec. 19, 2025).

[2] The Court notes that Williams initially denied that her conduct violated Rule 11 in the City's Motion for Leave [113]. *See* [113] at p. 2. However, she recanted that position at the show cause hearing while maintaining that the legal contentions in her subject filing were warranted by existing law. The Court will

of the filings at issue, acknowledged that, in failing to review the subject filings, they too violated Rule 11.

In the context of unverified AI usage, the Fifth Circuit has recently made clear that "… a lawyer must 'ensure that the legal propositions and authority generated are trustworthy.'" *Fletcher*, 168 F.4th at 235 (quoting *ByoPlanet Int'l, LLC v. Johansson*, 792 F. Supp. 3d 1341, 1347 (S.D. Fla. 2025)). Suffice it to say, the obligation imposed by Rule 11 "is absolute. It cannot be outsourced to technology or delegated to co-counsel." *Mattox*, 807 F. Supp. 3d at 1347. The Court finds that, through their own admissions, all four attorneys failed to verify the legal authorities cited in their respective filings in violation of Rule 11. All attorneys are licensed and are presumably well trained in the law. Thus, the Court finds that they were well aware of their duties prior to committing their respective violations. Sanctions under Rule 11 are warranted as to them all. *See Anderson v. JPMorgan Chase Bank, N.A.*, 2025 WL 3313734, at *5 (N.D. Tex. Oct. 13, 2025) (explaining in the context of AI misuse that failing to verify "the accuracy of legal citations or the substance of arguments is inconsistent with Rule 11(b)'s duty to make an inquiry that is reasonable under the circumstances.").

However, as noted previously, the Court is not limited to sanctions under Rule 11. This is particularly relevant in the Court's determination of the appropriate sanctions to be assessed against Williams and Wilson—the attorneys who utilized AI without verifying the output. This Court has previously acknowledged that district courts "throughout the country have held that citing fictitious or fabricated legal authority in filings without verifying their accuracy is conduct tantamount to bad faith." *Disability Rts. Mississippi*, 2025 WL 3691876 at *12 (collecting cases).

---

address the relevancy of that argument to the issue at hand when analyzing Willilams' specific conduct below but, for now, notes that she changed her position at the hearing and did not dispute her violation.

In line with those decisions, the Fifth Circuit has held that the submission of briefs containing fabricated authority is an abuse of the judicial process warranting sanctions under the inherent powers of courts. *See Fletcher*, 168 F.4th at 240. As the drafters of the subject filings, the Court finds that Williams and Wilson bear a higher degree of responsibility for the sanctionable conduct in this case.[3] Their acts of relying on AI output without verification alone supports a finding that they acted in bad faith. Nonetheless, in exercising restraint, the Court will consider whether other circumstances surrounding their involvement further justify sanctions under this Court's inherent authority. *See Spartan Composites, LLC v. Signature Sys. Grp., LLC*, 2025 WL 2982199, at *3 (E.D. Tex. Oct. 21, 2025) (quoting *Chambers*, 501 U.S. at 44, 111 S. Ct. 2123) (explaining that the Court's "inherent powers must be exercised with restraint and discretion.").

Additionally, the Court is also compelled to point out that this sanctionable conduct inevitably implicates Williams' and Wilson's ability to continue practicing before it. Stated simply, "[t]he ability to appear pro hac vice is a privilege, not a right[,]" that is governed by this Court's Local Rules. *Reech v. Sullivan*, 2018 WL 1698303, at *3 (S.D. Miss. Apr. 5, 2018); *see also In re Pioneer Health Servs., Inc.*, 2018 WL 4812432, at *11 (Bankr. S.D. Miss. Oct. 2, 2018) (explaining that "pro hac vice status is a privilege, not a right, and is subject to the Court's discretion to revoke."). The Court will also consider any violation of its Local Rules by Ridgeway and McClinton in determining the appropriate sanction(s).

A uniform framework for determining the appropriate sanctions in cases involving unverified AI usage has not yet been adopted within the Fifth Circuit. In the past, this Court has considered the violating attorney's candor, accountability, and remedial measures, as well as a number of Rule 11 factors. *See Disability Rts. Mississippi*, 2025 WL 3691876 at *21; *see also*

---

[3] To be clear, the fact that Ridgeway and McClinton did not draft the tainted filings, as the Court will explain *infra*, does not relieve them of their duty as signatories under Rule 11.

*Billups*, 2025 WL 3691871 at \*9-10.[4] In *Fletcher*, the Fifth Circuit also considered the violating attorney's candor and accountability. *See Fletcher*, 168 F.4th at 235 (explaining that had appellant's counsel "accepted responsibility and been more forthcoming, it is likely that the court would have imposed lesser sanctions.").[5] Ultimately, this Court is "vested with considerable discretion in determining the appropriate sanction to impose upon the violating party." *Billups*, 2025 WL 3691871 at \*4 (quoting *Thomas*, 836 F.2d at 877) (internal quotation marks omitted). In determining the appropriate sanction(s) in this case, the Court will assess each attorney's individual role and circumstances surrounding the violation.

I.      *Kathleen M. Wilson*

At the hearing, Wilson explained that she is a solo practitioner licensed to practice law in the State of Louisiana. She owns the Wilson Law Firm, LLC, which has no policy in place pertaining to AI use. Wilson accepted responsibility for drafting Withers' Opposition to Defendant City of Aberdeen's Motion for Summary Judgment [105], which contained two citations to nonexistent cases, i.e. hallucinatory citations. She explained that she used "First Drafts," an AI-powered program for drafting legal documents. When asked how long she had been using the AI tool, Wilson indicated that she had been doing so for approximately six months prior to the date

---

[4] "In considering what form of sanction to impose [under Rule 11], the Court may consider: (1) whether the conduct was willful or negligent; (2) whether the activity was isolated or part of a pattern of activity; (3) whether the conduct affected only a single event within the case or the entire litigation; (4) any previous similar conduct by the attorney; (5) whether the conduct was intended to cause injury; (6) the effect of the conduct on the litigation in terms of time and expense; (7) whether the responsible party was trained in the law; and (8) what sanction, given the financial resources of the responsible person, is needed to deter similar activity by other litigants." *SyncPoint Imaging, LLC v. Nintendo of Am. Inc.*, 2018 WL 6788033, at \*6 (E.D. Tex. Dec. 26, 2018) (citing *Bullard v. Chrysler Corp.*, 925 F. Supp. 1180, 1190 (E.D. Tex. 1996) (in turn citing FED. R. CIV. P. 11 Advisory Committee's note to 1993 amendment)).

[5] Other courts have articulated an analytical framework for determining whether sanctions should be imposed in cases of AI misuse that also include candor, correction, and accountability. *See Mattox*, 807 F. Supp. 3d at 1348; *see also Andre v. Warden, FCI Danbury*, 2025 WL 3281732, at \*6-7 (D. Conn. Nov. 25, 2025).

of the hearing. She admitted to failing to verify the AI output and indicated that she had used the tool for preparation of filings in other cases.

Wilson explained that she was shocked when the Court issued the show cause order pointing out the hallucinated cases appearing in her filing. In essence, Wilson took the position that she was unaware that AI could produce hallucinated cases and explained that she did not even know what a hallucinated case was. The Court finds that explanation to be insufficient and incredulous.

There have been "enough repeated incidents" throughout the country "of attorneys' misuse of [AI] technology that the pitfalls associated with using [AI] are well-established." *Wilson v. KIPP Texas, Inc.*, 2025 WL 3030444, at *3 (N.D. Tex. Oct. 29, 2025). In fact, the Fifth Circuit has recently held that "[i]f it were ever an excuse to plead ignorance of the risks of using generative AI to draft a brief without verifying its output, it is certainly no longer so." *Fletcher*, 168 F.4th at 235. For these reasons, the Court disbelieves Wilson's claim of ignorance of the risks associated with using AI in the legal context. The Court finds that she knew, or reasonably should have known, of those risks and that she acted in bad faith in failing to verify the legal authority in her AI-generated brief. *See In re Sealed Appellant*, 194 F.3d at 671 (holding that "[w]hen bad faith is patent from the record and specific findings are unnecessary to understand the misconduct giving rise to the sanction, the necessary finding of 'bad faith' may be inferred.").

Following the entry of the show cause order, Withers filed a Motion for Leave to File Corrected Memorandum Response [112]. The Motion [112] admits that "additional inaccuracies in certain citations [are] contained in Plaintiff's other filings." [112] at p. 1. It included a chart that contains an analysis of each citation contained in Withers' filings since the case has been pending before this Court. *See id.*, Ex. 1. Notably, the Motion [112] is only signed by Ridgeway and is *not*

10

signed by Wilson. [112] at p. 2. It states that "the undersigned counsel [Ridgeway] caused to be conducted a thorough analysis of each proposition and citation contained in Plaintiff's filings since the Middle District of Louisiana transferred the case to this Court." *Id.* at p. 1. At the hearing, Wilson confirmed that Ridgeway had prepared the Motion [112], though she referred to it as a response, and indicated that the two had reviewed it together. The Court therefore attributes minimal credit, if any, to Wilson for this mitigation effort.

Aside from that notation, the Court notes that the Motion [112] discloses that several other filings submitted on behalf of Withers contained misrepresentations of law, including a fake quote, and that one of the hallucinated cases also appeared in a separate filing. *See* [112], Ex. 1 at p. 2, 7. At the hearing, Wilson assumed responsibility for drafting those other tainted filings as well. The Court finds that, by her own admission, Wilson committed violations across multiple filings, which establishes that she engaged in a pattern of activity. *See Thomas*, 836 F.2d at 875 (explaining that a "series of filings may indicate a pattern of attorney conduct of some consequence.").

On this point, the Court is compelled to note that it has serious concerns that Wilson has continued this practice of AI misuse in other cases *after* she was put on notice of her violations in this case. Again, the show cause hearing in this case was held on January 20, 2026. On April 9, 2026, the United States Bankruptcy Court for the Western District of Louisiana sanctioned Wilson for submitting two filings containing "nonexistent cases and statutes as a result of what is universally known as 'AI Hallucinations.'" *See In re: Troylond Malon Wise, Debtor*, 2026 WL 970390, at *1 (Bankr. W.D. La. Apr. 9, 2026). It follows that, as in this case, Wilson admitted to the Bankruptcy Court that she failed to independently verify AI-generated documents before filing them. *See id*. Wilson's tainted filings in that case were respectively filed on March 16 and 18,

2026—two months *after* the show cause hearing was held before this Court.[6] Her continued AI misuse demonstrates an extreme dereliction of professional responsibility on her part. Though this Court cannot consider subsequent conduct that did not occur before it in determination of the appropriate sanction(s) in this case, it finds that at minimum Wilson's apologies to this Court on January 20, 2026 were not sincere. She failed to conform her conduct despite assuring to this Court that she would.

Reverting to the facts of this case, as of the date of the show cause hearing on January 20, 2026, Wilson had not been sanctioned for AI misuse. The Court also acknowledges that Wilson was forthcoming about the source of her mistakes and accepted responsibility for the same. Nonetheless, the Court finds that these factors do not counsel in favor of lesser sanctions here given Wilson's pattern of activity and knowledge of the risks associated with using "First Drafts." And, though her violations stemmed across multiple filings, the Court finds that her violation as it relates to opposing the City's summary judgment motion occurred at an important stage of this litigation. The Court was unable to resolve that dispositive motion given the tainted filings, and it effectively inhibited the case from proceeding further. The Court reiterates that it gives Wilson little to no credit for attempting to mitigate the violation. In the Court's view, Wilson, as the drafter of the tainted filings, should have taken the lead on auditing all of her filings in this case. Instead, based on information provided at the hearing, it was her co-counsel who took the lead in rectifying her transgressions.[7] The Court will take all of these variables into consideration in formulating the appropriate sanctions.

---

[6] *See In re: Troylond Malon Wise, Debtor*, W.D. La. Bankr. Cause No. 25-51132, Dkt. [63, 67].
[7] It is not the Court's intent to downplay Ridgeway's role, however. The Court is cognizant that she shared in the responsibility as a signatory to the filing. But, again, in this Court's view, Wilson bears a higher degree of responsibility as the drafter of the filing. The Court will address Ridgeway's involvement hereinafter.

II.      *Shauncey Hunter Ridgeway*

Ridgeway is a Mississippi licensed attorney who works for Christian & Small, LLP. She sponsored Wilson's pro hac vice admission in this case and serves as local counsel for Withers. *See* [43]. As noted, Ridgeway appears as a signatory to Withers' Opposition to Defendant City of Aberdeen's Motion for Summary Judgment [105], which contained two citations to nonexistent cases. Though she was not the drafter of that document, she admitted to failing to review and verify the accuracy of the legal authority cited therein. In other words, she did not check the cases after authorizing her signature on the filing.

At the hearing, Ridgeway explained that she was unaware of Wilson's AI use but did not attempt to excuse herself on that basis. She explained that she does not personally use AI and that her firm has a policy in place pertaining to AI use. In essence, Wilson would present Ridgeway with a copy of proposed filings drafted by Wilson, and the two would discuss the substance of the same. Despite this communication between the two, Ridgeway admitted to not reviewing the legal citations in those drafts before they were filed, including Withers' Response [105]. Ridgeway accepted responsibility for her role in the violation stemming from the fake cases cited in that filing as well as in others.[8]

As briefly discussed above, Ridgeway conducted a thorough analysis of all filings submitted on behalf of Withers in this case after entry of the Court's show cause order. The Court appreciates her efforts in attempting to remediate the issue and her acceptance of responsibility but finds that those factors do not shield her from being sanctioned. *See Nichols*, 2024 WL 4299023 at *4. In addition to admitting her violation of Rule 11, Ridgeway also conceded that her omissions violated this Court's Local Rules. Local Rule 83.1 provides in pertinent part:

---

[8] Following the show cause hearing, Ridgeway informed the Court that she had self-reported to the Mississippi Bar. The Court finds that this act demonstrates her acceptance of accountability.

Association and Duties of a Resident Attorney. No eligible non-resident attorney may appear pro hac vice unless and until a resident attorney has been associated. *The resident attorney remains* responsible to the client and *responsible for the conduct of the proceeding before the court.*

L.U. Civ. R. 83.1(d)(3) (emphasis added).

Certainly, resident attorneys are responsible for providing guidance and oversight of non-resident attorneys to ensure that they are complying with procedural and ethical rules. After all, resident attorneys are basically the gateway for out-of-state attorneys to have access to Mississippi's court system. The Court does not take a violation of that core duty lightly. At the same time, taking into account the specific circumstances of this case, it does not find that Ridgeway acted in bad faith. Her omissions were negligent and careless but not purposeful.

### III.  Kathryn Y. Williams

Williams is a partner at a Texas-based law firm (Daniel, Williams & Associates, PLLC) and is licensed in the State of Texas. Through the City's Motion for Leave [113], Williams admitted to "[relying] on artificial intelligence research tools without independent verification[,]" which resulted in "four citations in the City's filings [that] cannot be verified against published decisions[.]" [113] at p. 1. The Court determined that this violation occurred in two separate filings submitted by the City and signed by Williams and her local co-counsel, McClinton. In the Motion [113], Williams accepted sole responsibility as the drafter of the filings and indicated that McClinton "had no involvement in that process and reasonably relied upon lead counsel's representations." [113] at p. 4.

At the hearing, Williams explained that her law firm does not use open-ended AI but that it had acquired software that was built for in-house legal research. Williams' firm had only been using that research tool for ninety days prior to the entry of the Court's show cause order in this

14

case. She explained that the designer of this unnamed software operates out of Houston, Texas and was introduced to her firm at a CLE course. Notably, Williams explained that the software was built to produce results from jurisdictions in which her law firm typically practiced, which did *not* include Mississippi. According to Williams, she generally practices in Texas, Louisiana, and Florida. She explained that this case is the only Mississippi case she has ever been involved in, yet she resorted to using the software apparently knowing that it was not designed to encompass Mississippi law. After providing that explanation, once the Court expressed its concern that Williams had relied on the software output when it was not designed to include Mississippi cases, Williams contradicted herself by stating that the tool was supposed to provide regional results and that Mississippi was certainly within her firm's region. In this Court's view, Williams attempted to deflect from the fact that she disregarded the software's design, which she was aware of beforehand, once the Court expressed its concern. The Court finds that she was aware that the software was not designed to produce Mississippi case law and that she acted in bad faith in using it anyway. Notwithstanding this finding, Williams admitted that her firm implemented a policy on AI usage in 2025 after incorporating the software into the firm's practice. This brings the Court to its next point.

The policy, which Williams described as being part of her firm's standard operating procedure, specifically required attorneys in her firm to independently verify the software's output. The Court finds it particularly egregious that Williams, a partner and presumably a leader in her law firm, disregarded the AI policy by blindly relying on the AI research tool. Additionally, Williams indicated that most of the CLEs she attended in 2025 included topics related to AI. The Court finds that she was well aware of the dangers and risks associated with unverified AI output. Williams deliberately disregarded her firm's safeguard anyway. In doing so, the Court finds that

15

she acted in bad faith. *See Johnson v. Dunn*, 792 F. Supp. 3d 1241, 1262 (N.D. Ala. 2025) (holding that attorney engaged in conduct tantamount to bad faith when he failed to verify AI output despite his law firm's "internal controls designed to protect court filings from counterfeit citations[.]"); *see also In re Sealed Appellant*, 194 F.3d at 671.

Further, the Court is compelled to address a point raised by Williams in her Motion [113] and reiterated at the show cause hearing. Though she recanted her original position that she had not violated Rule 11 because the legal propositions in her filings were correct, she nonetheless emphasized at the hearing that she had not misrepresented any proposition of law in her filings. Other courts have squarely rejected the notion that a Rule 11 violation has not occurred merely because the legal propositions accompanying fake case citations are otherwise true or supported by other cases. In *Johnson*, the United States District Court for the Northern District of Alabama addressed the same observation Williams now makes when the same was raised by a law firm:

> At the threshold, the court rejects the invitation to consider that actual authorities stand for the proposition that the bogus authorities were offered to support. That is a stroke of pure luck for these lawyers, and one that did not remediate the waste and harm their misconduct wrought. Further, any sanctions discount on this basis would amplify the siren call of unverified AI for lawyers who are already confident in their legal conclusion. This court will have no part of that.

*Johnson*, 792 F. Supp. 3d at 1262.

Likewise, this Court will have no part in crediting Williams for her "stroke of pure luck[,]" and simply finds that her observation is irrelevant to the issue at hand. *Id.*

As with Wilson, the Court finds that Williams bears a higher degree of responsibility as the drafter of the tainted filings. The Court acknowledges that she was forthcoming about the source of her mistakes, she assumed some responsibility for her actions, and pursued corrective action in seeking leave of court to correct Withers' filings. On the other hand, her violations

occurred in two separate filings, which demonstrate a pattern of conduct. *See Thomas*, 836 F.2d at 875.

It is also apparent that she attempted to minimize the violation by emphasizing that the legal propositions in her filings were correct statements of law despite conceding that she had cited fake cases. The Court finds that those factors combined with her bad faith conduct in violating her firm's own AI policy, which came to light at the show cause hearing, simply outweigh any mitigation efforts on her part.

As a final point pertaining to Williams, the Court is concerned that she attempted to evade appearing at the show cause hearing in person by misrepresenting her availability after the Court scheduled the hearing. Though the Court does not factor this conduct in determining the appropriate sanctions because Williams was first confronted with this issue at the hearing, it nonetheless finds it noteworthy to mention.

The Court originally scheduled the show cause hearing in this matter for January 6, 2026. *See* [110] at p. 1. Williams then filed a Motion [114] seeking to appear at the hearing via videoconference or, alternatively, for the hearing to be continued to a later date. *See* [114] at p. 1-2. In that Motion [114], Williams represented that she had a conflicting federal court appearance in another case without providing further detail. *See id*. at p. 1. The Court then issued an Order [115] granting a brief continuance of the hearing and directing Williams to submit documentation verifying her conflicting court appearance on the originally scheduled hearing date. *See* [115]. Williams complied and promptly submitted a Response [117], which indicated that she was being required to appear at an initial scheduling conference in a case in federal court in New Jersey. *See* [117]. Notably, that initial scheduling conference in the New Jersey case was scheduled to occur *via video conference* three and a half hours *before* the show cause hearing in this case. *Id.*, Ex. 1

17

at p. 2. Upon verifying the information provided by Williams, the Court realized that the remote conference in the New Jersey case had actually been postponed via text order on December 8, 2025—two days *before* this Court even issued its order scheduling the show cause hearing in this case, which was entered on December 10, 2025. *See Marinesi v. United Airlines, Inc.*, No. 2:25-cv-04822, Dkt. [11]. The fact of the matter is Williams *never* had a scheduling conflict (at least in the New Jersey case) though she represented as much in her Motion [114] and Response [117]. The Court is troubled by this misrepresentation and finds that Williams was not truthful about her purported scheduling conflict in violation of her ethical duties as an officer of the court. This certainly reflects her lack of concern for the seriousness of the underlying misconduct in this case despite her contentions otherwise.

### IV.     Mark C. McClinton

Mark McClinton is Williams' sponsoring resident attorney and co-counsel. He was a signatory to the two filings submitted on behalf of the City, which contained hallucinatory citations. At the hearing, McClinton explained that he was not aware that the motions at issue were being filed but acknowledged that he had previously given Williams permission to affix his signature on prior filings without reading the documents. Though he was not provided the filings for his review prior to their filing, McClinton did not attempt to use that as an excuse and explained that it was not unreasonable for Williams to have done so based on their course of practice. In other words, he had impliedly given permission for her to do so.

McClinton also explained that only two attorneys practice at his law firm, that he does not use AI in his practice, and therefore does not have an AI policy in place. Much like Ridgeway, McClinton was unaware that his co-counsel, Williams, had used an AI research tool to conduct legal research in the case. McClinton also acknowledged that he should have reviewed the filings

18

when he received the automatic notification of electronic filing and expressed his remorse for having failed to do so. Again, he does not contest his Rule 11 violation.

For the same reasons provided above concerning Ridgeway, the Court finds that he too violated his duties as a sponsoring resident attorney pursuant to this Court's Local Rules. Because he was not the drafter of the filings at issue and did not use AI in this case, the Court has no reason to believe that he acted in bad faith. Like Ridgeway, the Court finds that McClinton acted negligently and carelessly. However, he accepted responsibility for his role in the violation and, like Ridgeway, informed the Court that he had self-reported to the Mississippi Bar following the show cause hearing. The Court credits his candor and steps taken towards holding himself accountable.

In an era of rampant unverified AI usage within the legal field, this case presents a prime example of the risk associated with serving as a rubberstamp when acting as local counsel.

V.      *Sanctions*

Having considered the array of sanctions issued against attorneys who have engaged in similar conduct as the attorneys in the case *sub judice*, the Court finds that a combination of monetary and nonmonetary sanctions are warranted for the reasons the Court has explained above. In deciding what form of sanctions are appropriate, the Court has remained cognizant of the Fifth Circuit's directive to impose the least severe sanction(s) necessary to accomplish deterrence. *See Thomas*, 836 F.2d at 878-79. The Court finds that the following sanctions are warranted and necessary to deter similar conduct by members of the larger bar and that no lesser sanction will serve that necessary deterrent purpose, vindicate the Court's interest, or otherwise rectify this misconduct.

First, pursuant to this Court's Local Rule 83.1(c) and (d)(8), Wilson's and Williams' pro hac vice admissions in this case are hereby REVOKED. Pursuant to this Court inherent authority and Rule 11, Wilson and Williams are hereby BARRED from entering an appearance in any case before the United States District Court for the Northern District of Mississippi for the period of two (2) years from today's date and are ORDERED to each pay a fine. Wilson shall pay the amount of $2,500 to the registry of this Court within 30 days from the date of this order. Williams shall pay the amount of $3,500 to the registry of this Court within 30 days from the date of this order.

Because Wilson is the only attorney who misused AI in this case without the benefit of having attended a CLE on the topic, Wilson is hereby additionally ORDERED to attend and complete, within 60 days from the date of this order, a CLE on artificial intelligence with an ethics component addressing the obligations of counsel regarding the use of artificial intelligence in the legal field.

Secondly, pursuant to Rule 11, Ridgeway and McClinton are hereby DISQUALIFIED from further participation in this case and are ORDERED to each pay a fine in the amount of $1,000 to the registry of this Court within 30 days from the date of this order. The Court is cognizant that upon disqualifying the resident attorneys the litigants are effectively left without representation in this case, and that this can cause hardship for them. Nonetheless, the Court finds that "even if there is some minor hardship, it must yield to the seriousness of the misconduct here." *Billups*, 2025 WL 3691871 at *10 (internal quotation marks and citations omitted). Withers and the City will be allowed 60 days within which to find new counsel to represent them in this case moving forward.

Lastly, the Court finds that referral of all attorneys to the applicable disciplinary body for disciplinary proceedings is warranted and justified under the circumstances. It also finds it

appropriate to provide a copy of this Order to the judges presiding over *In re: Troyland Malon Wise, Debtor*, W.D. La. Bankr. Cause No. 25-51132 and *Marinesi v. United Airlines, Inc.*, No. 2:25-cv-04822.

*Conclusion*

For the reasons set forth above, the Court hereby issues the following SANCTIONS:

1) Kathleen M. Wilson's pro hac vice admission in this case is REVOKED. Wilson is BARRED from entering an appearance in any case before the United States District Court for the Northern District of Mississippi for the period of two (2) years from today's date. Wilson is hereby ORDERED to pay a $2,500 fine to the registry of this Court within 30 days from today's date. Wilson is ORDERED to attend a CLE on artificial intelligence with an ethics component addressing the obligations of counsel regarding the use of artificial intelligence in the legal field and submit proof of attendance within 60 days from the date of this Order. She may submit proof to the undersigned via email at Judge_Aycock@msnd.uscourts.gov.

2) Kathryn Y. Williams' pro hac vice admission in this case is REVOKED. Williams is BARRED from entering an appearance in any case before the United States District Court for the Northern District of Mississippi for the period of two (2) years from today's date. Williams is hereby ORDERED to pay a $3,500 fine to the registry of this Court within 30 days from today's date.

3) Shauncey Hunter Ridgeway is DISQUALIFIED from further participation in this case. Ridgeway is hereby ORDERED to pay a $1,000 fine to the registry of this Court within 30 days from today's date.

4) Mark McClinton is DISQUALIFIED from further participation in this case. McClinton is hereby ORDERED to pay a $1,000 fine to the registry of this Court within 30 days from today's date.

5) The Court DIRECTS the Clerk of Court to send a copy of this Sanctions Order to the Mississippi Bar, the Louisiana Bar, and the Texas Bar.

6) The Court DIRECTS the Clerk of Court to electronically transmit a copy of this order to the Clerk of Court for the United States Bankruptcy Court for the Western District of Louisiana for transmittal to the judge(s) presiding over *In re: Troylond Malon Wise, Debtor*, W.D. La. Bankr. Cause No. 25-51132 and to the Clerk of Court for the United States District Court for the District of New Jersey for transmittal to the judge(s) presiding over *Marinesi v. United Airlines, Inc.*, No. 2:25-cv-04822.

The previously imposed stay shall remain in place for a period of 60 days to provide Withers and the City an opportunity to obtain new counsel. On or before August 7, 2026, new counsel shall enter an appearance.

The Court further advises Withers that he may proceed *pro se* if he desires to do so. If he desires to do so, he shall notify the Court in writing in a filing on the docket. Should Withers fail to have new counsel enter an appearance on his behalf or advise the Court of his intent to proceed pro se on or before August 7, 2026, the Court will dismiss this case *without further notice*.

Following entry of this Order, the Clerk of Court shall TERMINATE all four attorneys as counsel of record on the docket in this case.

The Court trusts that the attorneys will immediately advise the litigants of their disqualification from the case. The attorneys are directed to immediately provide the Court with mailing addresses for the litigants so that the Court can communicate with them as necessary until

22

new counsel enters an appearance on their behalf. The addresses may be provided via email to Judge_Aycock@msnd.uscourts.gov. In light of the Court's ruling, the Motions for Leave [112, 113] are hereby TERMINATED as MOOT.

SO ORDERED, this the 8th day of June, 2026.

/s/ Sharion Aycock
SENIOR UNITED STATES DISTRICT JUDGE