UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

TOM WITHERS, III — PLAINTIFF

VS. — CASE NUMBER: 1:24-CV-218-SA

CITY OF ABERDEEN — DEFENDANT

SHOW CAUSE HEARING

BEFORE HONORABLE SHARION AYCOCK
UNITED STATES SENIOR JUDGE

Aberdeen, Mississippi
January 20, 2026

(APPEARANCES NOTED HEREIN)

PHYLLIS K. McLARTY, RDR, FCRR, CCR #1235
Federal Official Court Reporter
301 West Commerce Street
Aberdeen, MS 39730
(662) 369-1017

APPEARANCES:

For the Plaintiff: SHAUNCEY HUNTER RIDGEWAY, Esquire
Christian & Small, LLP
603 Duling Avenue
Suite 204
Jackson, MS 39216

KATHLEEN M. WILSON, Esquire
Wilson Law Firm, LLC
1762 Dallas Drive
Baton Rouge, LA 70806

For the Defendant: KATHRYN YOUNG WILLIAMS, Esquire
Daniel, Williams & Associates, PLLC
2201 Hermann Drive
Houston, TX 77004

MARK C. McCLINTON, Esquire
McClinton Law Firm, LLC
100 East Main Street
New Albany, MS 38652

(CALL TO ORDER OF THE COURT AT 2:58 P.M.)

**COURTROOM DEPUTY**: The Court calls Case Number 1:24CV218, Withers v. City of Aberdeen. This is a show cause hearing.

**THE COURT**: Thank you.

I do want to make sure that I know who each of you are. That's one of the reasons I ask you to sit at the respective tables, so that I can keep track of all of you.

So representing the plaintiff, Tom Withers III, is Kathleen Wilson from Baton Rouge.

**MS. WILSON**: Yes, ma'am. Good afternoon.

**THE COURT**: Good afternoon. Thank you.

And Shauncey Hunter Ridgeway from Jackson.

**MS. RIDGEWAY**: Good afternoon, Judge.

**THE COURT**: Thank you, Ms. Ridgeway.

Now, there's a gentleman seated behind you, Ms. Ridgeway. Who is that?

**MS. RIDGEWAY**: Your Honor, this is my managing partner, Greer Mallette. He is not in the case, but he is here in support.

**THE COURT**: Nice to have you. Thank you.

**MS. RIDGEWAY**: Thank you, Your Honor.

**MR. MALLETTE**: I didn't want to presume to sit at the table; so I --

**THE COURT**: You're welcome to if you want to, but you

can sit behind, either one.

**MR. MALLETTE**: Okay.

**THE COURT**: Okay. Now, to my right, I have Kathryn Young Williams.

**MS. WILLIAMS**: Good afternoon, Judge.

**THE COURT**: Good afternoon.

And Mark McClinton.

**MR. McCLINTON**: Yes, Your Honor.

**THE COURT**: Thank you.

So, obviously, this is a hearing for you to show cause as to why the Court should not impose sanctions against you pursuant to Federal Rules of Civil Procedure, Rule 11; also the local court rules; and the Court's inherent authority.

There's a lot to unwind here, and I want to start by acknowledging that I have received some responses as to your positions.

I think it is -- if it's not fair to say that I need to know from the outset, I think it's fair to say that the plaintiff's counsel, Ms. Wilson, and, Ms. Ridgeway, you both acknowledge and agree that AI was used in preparation of various proceedings that you presented in pleadings that you presented to this Court and that those turned out -- and we're going to go through them individually -- to be either, one, falsified citations and/or hallucinated cases?

Now, who am I speaking to between the two of you?

Who's going to respond for the Court?

**MS. WILSON**: This is Kathleen Wilson, but I'll let counsel respond because she prepared our response, and we went over it together.

**THE COURT**: Okay. Would you move that mike closer to you, Ms. Wilson.

So let me turn now to defense counsel, Ms. Williams, Mr. McClinton. You both signed off on pleadings. Each of you did. And it's my belief that you have essentially admitted that you used AI cases, hallucinated cases, false representations of what those cases stood for. Is that correct?

**MS. WILLIAMS**: I -- yes, Your Honor.

**THE COURT**: Please stand.

**MS. WILLIAMS**: Oh, I apologize, Your Honor.

Yes, Your Honor, that is correct. I will acknowledge that AI was used. We have a proprietary tool in our office that we use for case --

**THE COURT**: And I'm going to give you an opportunity to explain that.

**MS. WILLIAMS**: Oh, yes, Your Honor. I apologize.

**THE COURT**: The premise being that, as we start here, we acknowledge in this courtroom there's been misuse of AI, and we're going to drill down as to what cases and the manner in which it was misused because I do think that I need a better

and fuller understanding of all of this in order to understand if sanctions should be awarded -- should be imposed, I should say, and to -- if so, to what extent.

**MS. WILLIAMS**: Yes, Your Honor. So acknowledge -- fully acknowledged, Your Honor.

**THE COURT**: Mr. McClinton, do you agree with the representation of your co-counsel, Ms. Williams?

**MR. McCLINTON**: Yes, Your Honor. I agree that AI was used. And Ms. Williams and I talked about this, and we have -- will endeavor to correct this in the future. I was not aware that AI was used until the show cause order was issued by the Court, and then I went back through all of the filings. Reviewed two filings in this case. And that -- that rests on me to have not enforced that review.

**THE COURT**: So we're going to flesh that out because it is important for the Court to understand who originated the falsified AI without verification. It's also important for all four of you to understand that placing your signatures on a document that you do not fully understand what it contained does constitute a violation of local rules and Rule 11.

So, Ms. Williams, and, Mr. McClinton, there were cases that I asked you to produce -- and I'm not going to read the citations but merely the name of the case. You were to bring two copies to the Court today. That's *Miller v. The City of Greenville*, *Riley v. The City of Tupelo*, *Buckner v. Walker*,

*Harris v. City of Grenada*. I believe these to be hallucinated cases. And so if you were able to produce two copies -- or produce a copy of that case, I'd be most interested in seeing it.

Ms. Williams, were you able to produce those copies?

**MS. WILLIAMS**: No, I was not. I did -- as it -- as I -- I learned in our response, I am able to produce *Riley v. City of Jackson*.

And I don't know if the Court would like for me to respond about what happened or if this is my opportunity to respond to tell the Court exactly what happened in our case research and exactly why we believe the tool gave us the information. If you'd like -- if you'd like for me to start with that explanation, I can, Your Honor.

**THE COURT**: In a moment.

**MS. WILLIAMS**: Okay.

**THE COURT**: Ms. Wilson, and, Ms. Ridgeway, you were directed to bring two copies of the following cases: *City of Grenada v. Harrison* and *Crittendon v. State Farm Mutual Auto Insurance*. Do you have those cases?

**MS. RIDGEWAY**: We do not, Your Honor.

**THE COURT**: And that is because they do not exist?

**MS. RIDGEWAY**: That is correct, Your Honor.

**THE COURT**: Thank you.

I'm going to start -- because I want the record to be

complete, I'm going to start by, first of all, acknowledging the numerous hours that have been expended in this case trying to track down what is falsified and hallucinated. And these law clerks to my right have spent a great deal of wasted time in trying to find these cases.

I'll take first -- Ms. Williams, and, Mr. McClinton, I'll take your *Miller v. City of Greenville* case. This was cited in the City of Aberdeen's Memorandum of Law in Support of your Motion for Summary Judgment at page 11. On that document, I have the signatories of both Williams and McClinton. Do you both agree with that?

**MS. WILLIAMS**: Yes, Your Honor.

**MR. McCLINTON**: Yes, Your Honor.

**THE COURT**: And so our research has revealed that the legal citation actually leads to a case that is styled *Succession of Plummer*, P-l-u-m-m-e-r, at 243 So.2d 81, Louisiana Court of Appeals, 1970. And it has nothing to do with *Miller v. City of Greenville*. You agree?

**MR. McCLINTON**: Agree, Your Honor.

**MS. WILLIAMS**: I would agree, Your Honor, but I'm not familiar, just for the court's record, with the citation that you just --

**THE COURT**: Because you did not use that cite to go see what cite that -- that case actually pulled up.

**MS. WILLIAMS**: That is correct, Your Honor.

**THE COURT**: You also used *Riley v. City of Tupelo*. This case was used in the City of Aberdeen's Memoranda in Support of its Motion Challenging the Reasonableness of Plaintiff's Notice of Submission of Accounting of Attorney Fees and Expenses. That's at page 4. Williams and McClinton both signed that memorandum on that motion.

The Westlaw citation of what you cited for *Riley v. City of Tupelo* actually takes you to a case that is called *Ainstein AI, Inc.* -- A-i-n-s-t-e-i-n A-I, Inc. -- *v. ADAC Plastics*, to be found at 2023 Westlaw 3568661. That is a Kansas case.

Is that right, Ms. Williams?

**MS. WILLIAMS**: Again, Your Honor, I'm not familiar with the Kansas case, but we do have an explanation for the Court when the Court's ready.

**THE COURT**: And, then, the Northern District Mississippi case number leads to yet a different case, which has been closed.

**MS. WILLIAMS**: That's correct.

**THE COURT**: And our research indicated that we were unable to locate a Northern District of Mississippi *Riley v. City of Tupelo*.

Were you able to locate it, Ms. Williams?

**MS. WILLIAMS**: Not a *Riley v. City of Tupelo. Riley v. City of Jackson*, yes.

**THE COURT**: And, then, third is *Buckner v. Walker*. Again, not citing the cite but merely a Northern District Mississippi case. This case was used in the Defendant's Memorandum in Support of Its Motion Challenging the Fees. Both of you signed off on that.

The Westlaw citation that you actually placed in your brief leads to a case that is styled *United States of America versus Donnie Smith.* That is a Sixth Circuit case having nothing to do with this matter.

And there is no Northern District case that leads you to the cite of *West v.* -- or *Walker* -- excuse me -- to *State Farm Casualty*.

You would agree with that; right, Ms. Williams?

**MS. WILLIAMS**: Yes, Your Honor.

**THE COURT**: And there is no case for *Buckner v. Walker* in the Northern District of Mississippi.

And, then, lastly, in your Memorandum in Support of the Motion Challenging the Reasonableness of the Fees, you cited *Harris v. City of Grenada*, a Northern District case, allegedly, and that Westlaw cite leads you to *Grant v. CRST Specialized Transportation*, which is a case coming out of the state of Washington.

The Northern District of Mississippi number leads you to *Cooper v. City of Charleston*, which is closed, and that text has nothing to do with this case. And we were unable to locate

*Harris v. City of Grenada*.

So that -- is that a fair summation of the four cases that you cited that have -- either, one, stand for false premises of law or hallucinated cases?

**MS. WILLIAMS**: Yes, Your Honor. I think that's fair.

**MR. McCLINTON**: Yes, Your Honor.

**THE COURT**: There are two others. *Hensley v. Eckerhart*. That's E-c-k-e-r-h-a-r-t. This instructs the courts to limit -- well, the quote that you gave was it "instructs courts to limit the fee awards to work 'on the claim upon which the party prevailed.'" This is in your Memorandum in Support of Reasonableness of Fees. Both of you signed off on it. That quote does not appear in that case at all.

**MS. WILLIAMS**: I'm sorry. Can you repeat the case that you're referring to, Judge?

**THE COURT**: *Hensley v. Eckerhart*.

**MS. WILLIAMS**: Okay. And you're saying that -- I'm sorry. Just to be clear, you're not saying that the case was hallucinated. You're saying the -- the --

**THE COURT**: You misstated the proposition of the case.

**MS. WILLIAMS**: Well, Your Honor, I'll have to look -- I'll have to look into that because I wasn't prepared -- I just -- we just shepardized all of our cases just to make sure that they were accurate. I don't have that case particularly pulled here.

**THE COURT**: Well, I represent to you --

**MS. WILLIAMS**: Yes, ma'am.

**THE COURT**: -- that that quote, as you quoted in the brief, is not present in the case.

**MS. WILLIAMS**: Okay. Yes, Your Honor.

**THE COURT**: Then you also stated, "When a municipality acts through a board of aldermen, 'no recovery, either at law or in equity, may be had on a contract that the municipality had no authority to make or was not lawfully approved on its minutes.'" And this is in your support for your Motion For Summary Judgment. Both of you signed off on it.

The quote does not appear in the case unless you can show me where it appears, Ms. Williams.

**MS. WILLIAMS**: I'm sorry. What -- I apologize to the Court. What case are you -- what case -- so this is not a hallucinated case. This is a -- this is a premise from that case?

**THE COURT**: This is you quoting material that does not exist in the case.

**MS. WILLIAMS**: Okay.

**THE COURT**: And, in fact, the words "recovery, equity, municipality" don't even appear in the case. Has nothing to do with the proposition that you state.

So you say you have an explanation. I'm interested in hearing it.

**MS. WILLIAMS**: So, particularly, Your Honor, with regard to the Memorandum in Support of Our Opposition For Fees, the search that we did in researching cases in order to support our opposition brief, it turns out the search that I did caused the tool to -- to give us cases particularly from cities in the Northern District of Mississippi because that's where I limited my search parameters. So that's my understanding from -- from trying to get to the bottom of why this -- why this happened like it did.

Because, for example, in the *Riley v. City of Tupelo* case that we quoted in our brief, it really -- the -- because of the search terms that I put -- I want cases in the Northern District of Mississippi that stand for this premise -- it gave me a case -- or it hallucinated a case, when really the case was from the Southern District of Mississippi, *Riley v. City of Jackson,* and that case I have here.

And from my understanding and from reading this opinion, reading what I argued in the opposition, the *Riley v. City of Jackson* case stands for the exact premise on which we quoted the *Riley v. City of Tupelo* case.

**THE COURT**: Provide me a copy of *Riley v. City of Jackson*.

**MS. WILLIAMS**: Yes, Your Honor. May I approach?

**THE COURT**: You may.

So this opinion is several pages long, and I will not

undertake to read it at this time.

But is it fair to say, Ms. Williams, that had you done what the rule requires you to do and go and read the case of *City v.* -- or *Riley v. City of Tupelo,* you would have determined that that was a hallucinated case? You would not have found *Riley v. City of Jackson* at that location?

**MS. WILLIAMS**: Yes, Your Honor.

I take full responsibility to the Court. I apologize to your law clerks for their waste of time in looking up these cases that have been hallucinated. It was not my intent to try to deceive or defraud the Court or anything like that.

I think that it's important to note that, from my research and what I did in order to prepare for today's hearings, is -- you know, the proposition of law that we stated in our brief remains unchanged. This is not made-up law. The citations are incorrect, Your Honor. No doubt that there's an error. And I completely take 100 percent responsibility for that. But our -- the City's proposition remains unchanged in our arguments.

**THE COURT**: And you think that's not a violation of the local rules or Rule 11?

**MS. WILLIAMS**: Oh, Your Honor, I'm not saying that at all. I'm saying I apologize to the Court, and I apologize, certainly, to your staff as well.

But the propositions of law that we've researched are

correct. The case citations -- *Riley v. The City of Tupelo* versus *Riley v. City of Jackson* -- are incorrect, but the propositions of law are correct.

**THE COURT**: That is, in this Court's opinion, unacceptable.

**MS. WILLIAMS**: Yes, Your Honor.

**THE COURT**: So I want to turn to the plaintiffs. And, unfortunately, on both sides here, I've got plaintiff's counsel and defendant's counsel using hallucinated cases and misquotes from cases because of the misuse and the unverification of AI.

But the Plaintiff Withers' Opposition to Motion For Summary Judgment that was signed by Ms. Wilson and Ms. Ridgeway, you agree that that contains fabricated case citations and fake quotes?

**MS. RIDGEWAY**: Yes, Your Honor.

**THE COURT**: And your Memorandum in Opposition to Defendant's Motion Challenging the Reasonableness of Fees signed by both of you, you agree that contains fabricated case citations and fake quotes?

**MS. RIDGEWAY**: It does, Your Honor.

**THE COURT**: I have some questions because I want to be so clear on the record. I hope that we can use this as an example for others about what you're not supposed to do.

So, Ms. Williams, I want to direct, first, to you something that actually -- if you'll stand for me, please --

has nothing to do with the AI issue, but it actually has to do with your request for a scheduling conflict.

You had -- you indicated to the Court that you had a scheduling conflict with the original hearing that was set on January the 6th at 1:30; correct?

**MS. WILLIAMS**: Yes, Your Honor, we did.

**THE COURT**: And the Court directed you to provide documentation as to that conflict --

**MS. WILLIAMS**: Yes, Your Honor.

**THE COURT**: -- correct?

**MS. WILLIAMS**: Yes, Your Honor.

**THE COURT**: And so you represent to the Court as an officer of the court that you had a scheduled hearing in New Jersey on January the 6th, same day as this was set originally, at 10:00 A.M.; correct?

**MS. WILLIAMS**: It was via Zoom, Your Honor, and it was changed the exact same day. We got a call from the clerk in that court the same day of the hearing asking for us to reset it. We rescheduled it --

**THE COURT**: Ms. Williams, that's not true.

**MS. WILLIAMS**: Your Honor --

**THE COURT**: That hearing was rescheduled two days prior to the scheduled hearing here, but you nevertheless represented to this Court that it was the same day.

**MS. WILLIAMS**: Your Honor, that is incorrect, Judge.

I got -- I personally talked to the clerk in that court that same day, told her about this hearing, told -- told her that I had rescheduled everything and that we were supposed to go via Zoom.

Your Honor, I would never represent something to the Court that is not 100 percent true, especially when it can be verified.

**THE COURT**: Were you aware that the scheduling conference in your New Jersey case was reset to a different date, January the 7th, 2026, not January the 6th, by text order on December the 8th, 2025, two days before this show cause order was entered on December the 10th?

**MS. WILLIAMS**: No, Your Honor, I was not. Like I said, I spoke to the clerk in New Jersey the day of our hearing, who informed us that the Court needed to reschedule.

**THE COURT**: I don't know who you spoke to, but I can tell you that the docket in New Jersey indicates otherwise.

So about the AI issue -- and I'll just ask, if any of these questions pertain to any four of you, if you would please stand and respond.

But have any of you, the four of you, in any case previous to this case been sanctioned by a court for citing fake or hallucinated cases?

**MR. McCLINTON**: No, Your Honor.

**MS. WILLIAMS**: No, Judge.

**MS. RIDGEWAY**: No, Your Honor.

**MS. WILSON**: No, Your Honor. No, Judge. I'm sorry.

**THE COURT**: Have any of you, in fact, used fake or hallucinated cases in any filings other than this case?

**MS. RIDGEWAY**: No, Your Honor.

**MS. WILSON**: No, Your Honor.

**MS. WILLIAMS**: No, Judge.

**MR. McCLINTON**: No, Your Honor. And I don't use AI in my drafting, and I was not aware that AI was used in this case. And if I had had an opportunity to review the filings, I hope I would have caught those, but I was not given an opportunity to review those filings.

**THE COURT**: Let's follow up on that.

Are you telling this Court -- was your signature affixed to this pleading that contains the hallucinated cases with or without your permission?

**MR. McCLINTON**: It was without my knowledge. I knew that a document -- I knew that the filing was being filed. I did not have an opportunity to review it before -- before it was filed, so before my name was affixed to it.

**THE COURT**: So Ms. Williams did not provide you a copy of the case that she -- or the pleading that she asked you to sign off on?

**MR. McCLINTON**: No, Your Honor.

**THE COURT**: Why did you sign off on it?

**MR. McCLINTON**: I didn't sign off on it, Your Honor. I didn't notice that it had been filed without my -- and, again, this is where I failed as local counsel. I was not involved in -- I made myself available for review, but I should have enforced the requirement that I review everything before it is filed, and I did not do that. And that is my failure, and I take full responsibility for that.

But had I known that anything had been filed -- was being intended to be filed that had hallucinated cases or misquoted case law, I would have caught that and corrected it. And if I had been paying attention like I should have, as soon as I noticed that it was filed with my name affixed to it without reviewing it, I should have asked that that filing be withdrawn so I could review it and then have it properly filed with my name affixed after I had reviewed it. And I didn't do that.

**THE COURT**: I want to follow up on what you're telling me because I want to ask the clerks here.

Is Mr. McClinton's signature on the memorandum of law? Is it a signature, or is it an "s," signed by? The latter?

**LAW CLERK**: It is electronic.

**THE COURT**: Electronic?

**LAW CLERK**: Yes, ma'am.

**THE COURT**: Okay. So my understanding for sure now that that was electronic, you are advising me that before --

that you gave your permission to affix your signature electronically without having read the filing that was filed?

**MR. McCLINTON**: I had in previous filings. In this filing, there was not a conversation of, "Hey, I have this finished. Can I file it? Do you want to review it, or can I just file it?" That never occurred at the filing in question here or the follow-up response for the amended brief.

I specifically requested to review that one, and it was -- it was filed with my signature affixed to it. But, luckily, there's nothing wrong with that one. I went back through it.

But, yes, Your Honor, that's -- that's what happened.

**THE COURT**: Okay. So have any of you attended a legal education course about the dangers of unverified AI?

**MS. RIDGEWAY**: Judge, I attended one last October -- I'm sorry -- September on the impact of AI in estate planning. That was in Baton Rouge, Louisiana.

And, then, within my firm, in October of 2024, we did have an in-house presentation on the use of AI and the risks involved in AI and how to properly use AI, specifically with regard to Lexis.

**THE COURT**: What software does your firm use?

**MS. RIDGEWAY**: We use Lexis, Your Honor.

**THE COURT**: And so what were the teachings behind your firm's meeting and policy regarding AI?

**MS. RIDGEWAY**: So our general policy has been that we do not use AI specifically with relation to anything like ChatGPT or Grok or Google AI, any type of open-ended AI. That may not be the correct terminology to use. We are not to use open-ended AI. And to the extent that it is used within the Lexis framework, we are to have client permission to use AI.

It has also been stressed within our firm that we are to verify the cases that may be produced by AI for the very reason that we are here today in regard to the risk of hallucinated cases. That has always been the firm's policy.

I do not personally use AI, Your Honor -- and I don't want to jump ahead of the Court's questions. I do not personally use AI in my research. It's conducted through Lexis and involves reading the cases before I put it into a brief.

That did not happen here.

**THE COURT**: Is there a period of time that you were doing it pursuant to the law firm's policy and then you have this variance where you did not follow that policy in this case?

**MS. RIDGEWAY**: I think that goes more to explanation that I didn't want to jump ahead on for the Court.

**THE COURT**: Let me hear it.

**MS. RIDGEWAY**: Yes, Judge.

I did not draft this pleading. In my role as local counsel -- and not sidestepping or disputing the requirements

under the local rules for local counsel or those of Rule 11, I did not draft this pleading. My practice with Ms. Wilson had typically been that we would discuss what pleadings were to be filed. She was aware that she could not file without my signature on a pleading.

We did discuss the actions that we were going to take with relation to this pleading. So our discussions included the substance of the arguments that we made, but I did not review to verify the accuracy.

So on pleadings that I prepared in particular in this case -- and I can represent to the Court as far as pleadings that I prepared -- that would have been the motion for entry of default pleadings, which I understand is not at issue, but I did follow my normal practices for the pleadings that I specifically drafted.

**THE COURT**: And let me ask, Clerks, is -- Ms. Ridgeway's signature on the two motions/memorandums that's at issue in this case, is that a wet signature or an electronic signature?

**LAW CLERK**: They are electronic signature.

**THE COURT**: Okay. CLE. You have had some CLE?

**MS. RIDGEWAY**: Correct, Your Honor.

**THE COURT**: What about you, Ms. Wilson?

**MS. WILSON**: No, ma'am. Never even heard of hallucinated cases.

**THE COURT**: What about you, Ms. Williams?

**MS. WILLIAMS**: Yes, Your Honor.

Most of the CLEs that we attended in 2025, they all have a portion of it that's related to AI. And from that CLE, we got someone -- because we also, like Ms. Ridgeway stated, do not use open-ended AI like ChatGPT or any -- this was a proprietary software that was built for our -- like, for our searches in-house of our law firm.

We also use LexisNexis, Your Honor.

**THE COURT**: Ms. Williams, how many people are in your firm?

**MS. WILLIAMS**: Nine people total, including attorneys and staff.

**THE COURT**: Okay. How many attorneys?

**MS. WILLIAMS**: Four.

**THE COURT**: And this is Daniel, Williams & Associates from Houston, Texas?

**MS. WILLIAMS**: Yes, Your Honor.

**THE COURT**: And does your firm have a policy?

**MS. WILLIAMS**: We do. We implemented a policy in 2025 regarding AI.

**THE COURT**: Before or after you attended the CLE?

**MS. WILLIAMS**: After. Because that's when we got knowledge of how attorneys were implementing this into their practice and things like that. We got the knowledge.

**THE COURT**: And does that policy require you, as an attorney in this firm, pursuant to that policy, to read to make sure that cases have been verified?

**MS. WILLIAMS**: Yes, Your Honor. The independent verification is a part of our standard operating procedure.

**THE COURT**: And you did not do that in this case?

**MS. WILLIAMS**: Yes, Your Honor. That is correct. I did not independently verify -- verify these cases.

**THE COURT**: So, Ms. Williams, what software does your firm use?

**MS. WILLIAMS**: So we got some technology people from the CLE that we -- that we use their consultants. They're out of a firm in Houston. And we got them to build us a software particularly for jurisdictions in which we practice. Right?

So it's not, like -- I'll represent to the Court that in the states that we normally practice in and that we frequent the courts.

**THE COURT**: Do you normally practice in Mississippi? In the Northern District of Mississippi?

**MS. WILLIAMS**: No, Your Honor, we do not. And that is a part of the reason that we believe that our tool hallucinated this case being from the Southern District -- like, the city in the Southern District versus in the Northern District. That's part of our issue, Your Honor.

**THE COURT**: Mr. McClinton, do you --

**MS. WILLIAMS**: And, again, I apologize to the Court.

**THE COURT**: -- have you attended any CLEs?

**MR. McCLINTON**: No, Your Honor. My first one is Thursday. And we -- I'm just a two-man shop, and we don't have policies. We don't use -- so, no, Your Honor.

**THE COURT**: Okay. Let me go back to you, Ms. Wilson. And tell me -- you've used AI in cases prior to this case?

**MS. WILSON**: Yes, I have.

**THE COURT**: For how long? I'm curious.

**MS. WILSON**: About six months.

**THE COURT**: Okay.

**MS. WILSON**: And I -- I was happy with it. I thought it was the best thing since sliced bread. I mean --

**THE COURT**: I bet you did.

**MS. WILSON**: But I was surprised when -- because I did -- I don't have Lexis -- I didn't have Lexis. I have it now.

When I -- I would go through and I would google the cases, look for them through Justia. And when the Court issued the order to show cause, I was shocked, and I was even surprised with my co-counsel. I said, "No, this case exists." And so -- even when I googled it, it came up.

But I had to go to Southern University to the -- to the library to ask the clerk to pull these cases for me, the two cases, and she pulled the cases, but they -- they were

wrong cases. I said, "Oh, my Lord." So the next day I got a subscription of LexisNexis.

And so, you know, I couldn't rely on -- the more I told Chat or Google, that's the more it gave me the same case.

**THE COURT**: So your firm is Wilson Law Firm out of Baton Rouge?

**MS. WILSON**: Yes, ma'am.

**THE COURT**: How many people are in your firm?

**MS. WILSON**: I'm the only attorney, and I have two support staff, two people support staff.

**THE COURT**: And do you have a policy --

**MS. WILSON**: No, ma'am.

**THE COURT**: -- regarding AI?

**MS. WILSON**: No, ma'am. I never heard of hallucinated cases before.

**THE COURT**: So let me ask you this: Is it fair to say that you accept sole responsibility for drafting the documents at issue in this case?

**MS. WILSON**: Yes, I do. Yes, I do.

**THE COURT**: And that you asked Ms. Ridgeway to sign off on those as local counsel?

**MS. WILSON**: I did, yes.

**THE COURT**: Ms. Ridgeway, when you were asked through conversations and such to sign off on her preparation, her work, did you check the cases?

**MS. RIDGEWAY**: I did not check the cases, Your Honor.

**THE COURT**: So in the Motion for Leave, one of the two fake cases also appeared in a previous filing submitted by the plaintiff. You probably found that in your research --

**MS. WILSON**: Yes.

**THE COURT**: -- Ms. Wilson?

**MS. WILSON**: Yes.

**THE COURT**: And did you prepare that document as well?

**MS. WILSON**: Yes. City of Grenada.

**THE COURT**: So we typically now use the terminology audit. Once this came to light, Ms. Wilson, because you received the Court's show cause order, did you conduct an audit of your firm's cases to determine if in any other case hallucinated or fake quotes had been used?

**MS. WILSON**: Yes.

**THE COURT**: And what did you find?

**MS. WILSON**: I didn't see -- I didn't see -- I saw one case -- one case. It was a criminal case that was interjected into a civil case. And I withdrew that document from the court immediately.

**THE COURT**: What case was that in?

**MS. WILSON**: That was in *Friends of -- Friends of Impact*.

**THE COURT**: I'm not asking you to guess. What I want you to do is produce to us the case that, based on your audit,

you determined also included a hallucinated case, with the case reference and case name and number, so we can make inquiry regarding that case.

**MS. WILSON**: Yes, ma'am.

**THE COURT**: I may have asked you. What software did you use, Ms. Wilson?

**MS. WILSON**: I didn't use -- I have First Drafts. I pay, like, $500 a month for it. And it prepares briefs for me. And it's normally good with cases, and so -- but every now and then there is a hallucinated case in it.

**THE COURT**: It is not acceptable that every now and then there is a hallucinated case.

**MS. WILSON**: That's why we have to look at all of them.

**THE COURT**: You have to look and verify everything that you file, and none of you have done it in this case. It is pretty apparent to me that you are in violation of Rule 11, the local rules, and also the Court's inherent authority.

I've inquired about your policies that may exist within your firm.

Ms. Ridgeway, I'm going to go back to you. This matter, having been brought to light based upon preparation by Ms. Wilson, has your firm conducted an audit to see if you have signed off or used hallucinated cases or fake quotes in other cases?

**MS. RIDGEWAY**: I have, Your Honor. And I can verify for the Court that there are no fake quotes or other hallucinated cases in any cases that I appear in.

**THE COURT**: So but for Ms. Wilson's production of a document that you failed to verify, it's -- is it your opinion that your firm is following its policy?

**MS. RIDGEWAY**: Yes, Your Honor. Notwithstanding this incident, which I don't dispute is in violation of Rule 11 and the local rules of this Court. But notwithstanding this incident. This was a violation.

We have also, taking seriously the Court's bringing this to our attention, gone through each of the pleadings in this matter, again, also all of my other cases that I appear in, and also in revising our policy on AI to specifically -- or affirmatively require that in affiliating with -- or sponsoring a *pro hac vice* attorney, ensuring that they will comply with the policies that we have in place with AI as well.

And we will be required to go over that with that attorney so that we are not having an incident -- a repeat incident where we are sponsoring an attorney whose practices may be different from our own.

**THE COURT**: So are you aware that because you signed off electronically or wet ink -- doesn't matter -- because you signed off, you had an independent duty under the ethics code as well as Rule 11 to verify what was stated in that pleading

drafted by Ms. Wilson?

**MS. RIDGEWAY**: I do not dispute that, Your Honor.

**THE COURT**: And it's your representation, to be clear, Ms. Ridgeway, that you did not -- you did not verify before you consented to that filing?

**MS. RIDGEWAY**: I did not verify the citations, Your Honor.

**THE COURT**: Thank you.

Let me go back to you, Mr. McClinton. I want to follow up on your role. I take it to be somewhat similar to Ms. Ridgeway's. Ms. Ridgeway was presented with an actual document but did not verify it.

Correct, Ms. Ridgeway?

**MS. RIDGEWAY**: Correct, Your Honor.

**THE COURT**: Mr. McClinton, I'm understanding that you did not have the opportunity to review a document, was not presented to you, and you nevertheless signed off on it?

**MR. McCLINTON**: I never signed off on it. What I will say is, once I realized that it had been filed with my signature on it, I -- where I failed was not reviewing that -- withdrawing it, reviewing it, making sure that everything was correct in it, and then having it re-filed.

But as far as me saying, "Yes, it's okay to file that document," on the document in question, that did not occur. I did review and give permission to file -- or to affix my name

to the Motion for Leave to File Out of Time, Motion to Substitute, and the Confidential Settlement Memo. I reviewed those documents. The --

**THE COURT**: Who prepared those documents?

**MS. WILLIAMS**: Your Honor, I did. I prepared all of the filings.

**THE COURT**: And have you reviewed those documents to see if they contained false cases or hallucinated cases?

**MS. WILLIAMS**: The Motion for Leave, yes, Your Honor. I have not reviewed the Confidential Settlement Memorandum in preparation for this hearing, Judge, because I don't believe that we filed that into the record. I could be wrong, but I don't believe that we did.

But, yes, Your Honor, like I said earlier, I take full responsibility. I also want to let the Court know that, you know, as far as, you know, in my practice and with the level that we try to practice at, this will never happen again in my practice. I can aver that to the Court.

**THE COURT**: Okay. How many cases do you have filed in the state of Mississippi? Do you know the names of those cases?

**MS. WILLIAMS**: One. This one.

**THE COURT**: Okay. If you file another case in the state of Mississippi, I need to be notified. I would like to, in turn, notify attorneys in that case of your prior misconduct

so that that can be tracked. Understand?

**MS. WILLIAMS**: Yes, Your Honor.

**THE COURT**: Do you regularly practice in Texas?

**MS. WILLIAMS**: So I'm licensed in the state of Texas and several other federal courts throughout the United States. I practice --

**THE COURT**: Did you appear in New Jersey *pro hac vice,* or did you appear as licensed counsel?

**MS. WILLIAMS**: My license is currently pending, but I do have a *pro hac vice* that has been approved by the court.

**THE COURT**: What states are you licensed in other than Texas?

**MS. WILLIAMS**: That's the only state I am licensed in, Your Honor.

**THE COURT**: Now, Ms. Wilson, are you only licensed in Louisiana?

**MS. WILSON**: Yes, ma'am.

**THE COURT**: Okay. I have attempted to understand each of your involvements particular to this case and particular to your own involvement because I think that's going to -- I know it's going to become important as I'm trying to sort out potential sanctions.

So I -- off the cuff, I will make this statement. I don't know where this litigation is headed. I have no idea. When this happened, it just became an AI issue and not a case

that I've even looked at, considered the merits. Okay?

But I will say this. Anytime that I am dealing with a case where there has been a failure to file an answer and that's gone on for some time and we've had to go in and look at the cause behind why the pleadings were not timely filed in an attempt to set aside a default, it raises lots of red flags for me that somebody is not paying attention.

So I say that to say, about the merits of the case, if you're serious about this case, then y'all need to get on with it and do what is necessary. It may turn out that all of you are disqualified in this case because of your unverified usage of AI.

And if that's the case, it's the expectation of this Court that you communicate very clearly with substitute counsel for them to understand how they can immediately take this case and work the merits of it. So I expect your -- I expect your cooperation in that regard.

I want to turn my attention a little bit to who knows what here. Does Tom Withers -- has he been informed -- prior to your usage of AI, Ms. Wilson, was he informed of your intent to use AI?

**MS. WILSON:** Yes, ma'am.

**THE COURT:** And did he consent?

**MS. WILSON:** Yes.

**THE COURT:** And is that in writing?

**MS. WILSON**: No, ma'am, it's not in writing.

**THE COURT**: Tell me how it was communicated to you.

**MS. WILSON**: We talk on the phone, and I tell him what I'm getting ready to do, and I send him a copy of it. And I told him that this is the software I'm using, and he's happy with it.

**THE COURT**: Did you tell him about this show cause hearing?

**MS. WILSON**: I did. We talked. We had conferences -- several conferences, all three of us.

**THE COURT**: Okay.

So does the City of Aberdeen -- Ms. Williams, did you communicate with the mayor or board or their attorney -- regular attorney? And who would their regular attorney be?

**MR. McCLINTON**: It's Walter Zinn.

**THE COURT**: Thank you.

Did you communicate with any of those people of your intent to use AI?

**MS. WILLIAMS**: Yes, Your Honor. It's in our -- it's in our retainer agreement, the search tools and the different things that we use in order to help us research, case summarize, et cetera.

**THE COURT**: And did you make the mayor aware that you were in this hearing today?

**MS. WILLIAMS**: We did, Your Honor.

**THE COURT**: And the board?

**MS. WILLIAMS**: We did.

**THE COURT**: And Mr. Zinn?

**MR. McCLINTON**: I notified Mr. Zinn, Your Honor.

**THE COURT**: Okay.

So saying what I was saying about my desire to make a record as to who knew what, what permission you sought and received, where this case goes from now, who was responsible for pleadings and who signed off, I want to give each of you an opportunity to tell me anything more that you need to, any additional explanation that you think may be in order that's not already reduced to the record.

I'll call on you first, Ms. Ridgeway.

**MS. RIDGEWAY**: Thank you, Judge.

First, leading with my apology to the Court and your staff for the resources and time that you all have had to expend in attempting to sort this out. I understand that and do not take that lightly.

Second of all, to the Court's most recent question regarding the use of AI and the client knowledge and consent to that, I was not aware of Ms. Wilson's practices with regard to AI. That is something that -- going forward, in the event that we are sponsoring a *pro hac vice* attorney, that is something I know I need to look at in in-taking that type of matter so that I am assured that those practices align with the practices that

I'm required to abide by for my firm and to make sure that they align with the rules of court, our ethical obligations as well.

Your Honor, I would also represent to the Court, to the extent that this matter stemmed from, I believe, the City's challenge to the reasonableness of our fees on the motion for default or to set aside the default, I am prepared to waive my portion of those fees so that that has not -- does not have to be decided by the Court.

I have also discussed within my firm, just in terms of any disciplinary actions for myself, what steps should be taken, again, recognizing my failures on my part as local counsel. We have discussed my not sponsoring any *pro hac vice* attorneys for the next two years. So I do offer that for the Court.

We have also discussed my being required to put on an AI seminar, for lack of a better word, to offer training and to require me to do some additional research on the use of AI, its proper uses and its improper uses, present that to the associates within our firm.

Your Honor, I also did take a look at various cases around the country because I understand that this is an issue that is a hot-button issue for the courts. It is rampant. And it's a new field that attorneys are having to navigate.

I did look at a case out of the Southern District of Florida, if it is helpful for the Court, that specifically

dealt with hallucinated cases involving local counsel and *pro hac vice* counsel. That cite for the Court is Versant Funding, LLC v. Teras Breakbulk Ocean Navigation Enterprises, LLC. That is out of the Southern District of Florida, 2025, U.S. District, Lexis 98418. And the Westlaw cite is 2025 WL 1440351.

Again, Your Honor, acknowledging my part and responsibilities as local counsel, but I did not verify the sources as I should have, but I did not prepare these pleadings.

**THE COURT**: Thank you.

Ms. Wilson.

**MS. WILSON**: Your Honor, I truly apologize to the Court and to my co-counsel. I really thought those cases were legitimate. I sent her the case, and it still popped up until I -- I didn't know they were not -- I didn't know they were hallucinated until I went to Southern University to the library to ask them to pull the cases.

And immediately after that, when the cases did not exist, I had to concede to co-counsel or local counsel and say, "They're not there. I apologize for putting you in this situation."

And I am ashamed of it. And I immediately signed on with LexisNexis and got a subscription to that. And I make sure me and my staff go over all of the cases in whatever

pleadings I file.

And me and Mr. Withers have been working on this for at least five or six years, and so I apologized to him. He's very understanding. He's old school. He's an attorney. So he knows either -- all the way back when case -- courts did not accept fake cases or cases that were not cited correctly. And so -- and this is the new school form of that.

And I take full responsibility for not doing my research properly and having Ms. Ridgeway involved in this with her whole day.

Thank you.

**THE COURT**: Thank you.

Ms. Williams.

**MS. WILLIAMS**: Yes, Your Honor.

Just, again, extending my apologies both to the Court and your staff.

Your Honor, it was never my intention to -- to submit a hallucinated case. I am -- I too am embarrassed by this, Your Honor. This is not the way that I practice law and try to be excellent as a lawyer.

Again, you know, I will state to the Court that, you know, it was 100 percent my fault. The search terms that I used with the tool that was built -- since we got the order to show cause and verified -- verified the cases -- the case cites that were hallucinated and took it to our consultant, we've

invested thousands of dollars to ensure that this never happens again.

We're also making sure that every time that we file something, myself included, it will be double verified on Lexis. We subscribe to Lexis. We subscribe to our tool. We subscribe to a lot of different things in order to make this not happen again. And I can just tell the Court that, in my practice, this will never happen again.

**THE COURT**: Ms. Williams, I'm still a little bit concerned about your mention of your tool within your law firm was custom designed by whomever the IT staff that you heard speak. It was not custom designed to include cases generated in the Northern District of Mississippi, and yet you relied on it.

**MS. WILLIAMS**: Well, the issue is, is that it was supposed to be regional; right? So we practice generally in Texas, Louisiana, Florida. Not Mississippi. But Mississippi is certainly within our region.

So it's my understanding from the consultant, when I put the specific search term in "I want cases out of the Northern District of Mississippi that stand for the premise that this hourly bill rate should be this as opposed to what they argued in their brief," it's my understanding from the consultant that the tool took the Northern District of Mississippi and just ran with it, which is, again, *Riley v.*

*City of Tupelo versus Riley v. City of Jackson*. All of the law that we put in the brief is correct.

**THE COURT**: Okay. So let me ask you -- I am interested -- you said there was only one Mississippi case that you're involved in now, that being this case?

**MS. WILLIAMS**: Yes, Your Honor.

**THE COURT**: And you're acknowledging your unverified use of AI. Has your firm conducted an audit of all of the other cases to determine what other cases AI has been misappropriated or used?

**MS. WILLIAMS**: So we've only been using this tool for the last 90 days. So all of the cases that we've researched on that tool specifically we did an audit of. Everything has been A-OK. But these have all been cases that have been in Texas, Louisiana. Nothing outside of that realm. So we've -- so we've been okay.

But we've invested additional moneys into the tool just to try to, you know --

**THE COURT**: But to answer my question, you found other cases where AI had been used?

**MS. WILLIAMS**: Other cases where we used specifically this tool but no cases had ever been hallucinated, Judge. This is my -- this is my first issue ever with this, and, like I said, this will be the last. This will never happen again for me.

**THE COURT**: I understand.

Mr. McClinton, would you -- would it be fair to say that you gave her blanket authority to sign your electronic name, or were you in a position where your agreement with Ms. Williams would be to the effect that she would produce a document, send it to you for your review before filing?

**MR. McCLINTON**: I think the lack of clarity in our communication -- and, again, it rests on me -- is that I did not communicate clearly enough with our -- to give the Court a clear answer on that.

You know, we communicated early on about, you know, going through different steps. We talked about the substance. And she would have -- honestly probably would have had an honest belief that it was okay as long as I was -- I knew the filing was coming about, that she told me what was going to be in the filing, that she researched it, that she could affix my name.

And it's my fault and rests solely on me that I did not state in explicit terms, "Nothing can be filed unless it crosses my desk and I affix my signature to that filing." And, then, once the -- you know, once the first filing was filed with my name affixed to it that I had not reviewed, I fully acknowledge that, at that time, I should have asked the Court to withdraw that filing or, at the very least, reviewed it and made sure there was nothing in it with the issues that we have

here today and, if I had identified any, make the Court aware of that and then seek remedial measures to prevent that in the future with Ms. Williams. And I did not do that, Your Honor.

And I failed in my responsibility as local counsel in not -- in not making sure that everything that got filed with my name on it had been reviewed meticulously. And I understand that now as the responsibility of local counsel. And I guess --

**THE COURT**: And these are not my rules. These are professional rules of conduct. This is --

**MR. McCLINTON**: Yes, Your Honor.

**THE COURT**: -- Rule 11. This is local rules, all -- rules that all of you can read for yourself. This is the case law that is coming out of these circumstances. I mean, we're dealing with it every day.

Ms. Ridgeway, have you self-reported to the Mississippi Bar?

**MS. RIDGEWAY**: I have not.

**THE COURT**: Ms. Wilson, have you self-reported to the Louisiana Bar?

**MS. WILSON**: No, ma'am.

**THE COURT**: Ms. Williams, have you self-reported to the Texas Bar?

**MS. WILLIAMS**: No, Judge.

**THE COURT**: Mr. McClinton, have you self-reported to

the Mississippi Bar?

**MR. McCLINTON**: No, Your Honor. But I will.

**THE COURT**: Okay. Do any of you have anything more before we conclude this hearing?

**MS. RIDGEWAY**: I do not, Your Honor.

**MS. WILLIAMS**: Nothing from the defendant.

**THE COURT**: If not, that concludes the hearing. Thank you.

(CONCLUDED AT 4:00 P.M.)

CERTIFICATE

I, Phyllis K. McLarty, Federal Official Realtime Court Reporter, in and for the United States District Court for the Northern District of Mississippi, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing 43 pages are a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Witness my hand, this 9th day of June, 2026.

/s/ Phyllis K. McLarty
PHYLLIS K. McLARTY, RMR, FCRR, CCR #1235
Federal Official Court Reporter